J. M. GUFFEY PETROLEUM COMPANY v. JEFF CHAISON TOWNSITE COMPANY.

Decided January 17, 1908.

**1.—Oil Land—Lease Contract—Construction.**

In a suit by a lessor against a lessee for failure to properly develop and protect the leased premises against sub-drainage of oil, contract and evidence considered, and held that an agreement on the part of the lessor that the production from a certain well then on the leased premises might be limited to a certain quantity, absolved the lessee from the duty, as matter of law, of sinking other wells on said property for the purpose of increasing the production.

**2.—Contract—Ordinary Care—Definition.**

A charge upon ordinary care which requires the defendant to exercise "business-like diligence," and to act as a "prudent business-like man," or any other variation of the well established definition of ordinary care, condemned.

**3.—Contract—Breach—Assignment of Claim—Ultra Vires.**

A defendant sued for breach of contract cannot question the right of a plaintiff corporation to receive the damages, on the ground that its acquisition of the claim was ultra vires, when the assignment of the claim was an executed contract and binding on the assignor.

**4.—Pleading—Verdict—Remittitur.**

Plaintiff's petition contained two separate and distinct counts or claims for damage; the jury rendered separate verdicts on each count; the plaintiff entered a remittitur in general terms without specifying to which count it should apply; in neither the motion for new trial nor in any assignment of error did the appellant complain of the amount of the verdict on the first

count; the error in the charge of the court requiring a reversal of the judgment related only to the second count. Held, that the entire amount of the remittitur should be applied to the verdict on the second count.

Appeal from the District Court of Jefferson County. Tried below before Hon. W. H. Pope.

*Greers & Nall, Carlton & Proctor* and *M. Dies,* for appellant.— The plaintiff being entitled under the lease contract to only one-tenth of the oil which was or could have been produced from the leased premises by the exercise of ordinary diligence, would have been entitled to recover the value of one-tenth of such oil as could have been and was not produced, and it was therefore error to charge that recovery could be had for the value of the entire amount of the oil which could have been but was not produced. Austin v. Talk, 26 Texas, 130; Missouri, K. & T. Ry. Co. v. Woods, 25 S. W. Rep., 742; San Antonio & A. P. Ry. Co. v. Robinson, 73 Texas, 277.

That the previous paragraph of the charge might, to one learned in the law, correct this charge, does not cure the error. Edwards v. Dickson, 66 Texas, 615; Galveston, 'H. & S. A. Ry. Co. v. Le Gierse, 51 Texas, 189.

The lease contract being silent as to any duty on the part of the lessee to drill any certain number of wells, or to drill wells for the purpose of protecting the lines from drainage through wells on adjoining tracts, the only duty which the lessee owed in these regards arose from an implied contract, and the utmost duty so arising was to act as an ordinarily prudent person would have done under the contract and the facts and circumstances existing at the time. It was therefore error to charge the jury that the lessee owed the duty to exercise prudent, "business-like" conduct, or to do such acts as a prudent, "business-like man" would have done, or to exercise "business-like diligence." Austin & N. W. Ry. Co. v. Beatty, 73 Texas, 592; City of Austin v. Ritz, 72 Texas, 402; Texas & Pac. Ry. Co. v. Huffman, 83 Texas, 290; Houston & T. C. Ry. Co. v. Smith, 77 Texas, 181; International & G. N. Ry. Co. v. McDonald, 75 Texas, 48; Harris v. Ohio Oil Co., 57 Ohio St., 118, 48 N. E. Rep., 502; Glasgow v. Chartiers Oil Co., 152 Pa. St., 48, 25 At. Rept., 232; McKnight v. N. Gas Co., 146 Pa. St., 185, 23 At. Rep., 164.

The plaintiff and its predecessor in interest, having made a contract, which, when construed in the light of all the surrounding circumstances existing at the time, excused the defendant from producing more than 20,000 barrels of oil per month from the leased premises, during the year beginning March 1, 1902, and ending March 1, 1903, the plaintiff could not recover for failure of the defendant to produce more than 20,000 barrels of oil per month during that period, and it was error for the court in its charge to allow the jury to consider how much oil could have been produced during said time, by the exercise of diligence, as a predicate for fixing the amount of the damages. The court should have construed the written contract and told the jury the proper construction. Taylor v. McNutt, 58 Texas, 73; Ivey v. Williams, 78 Texas, 687;

Wood v. Gulf, C. & S. F. Ry. Co., 15 Texas Civ. App., 327; Moss v. Helsley, 60 Texas, 438.

The agreement between the J. M. Guffey Company, assignor of the J. M. Guffey Petroleum Company, and J. M. Hebert and Mrs. Clara Chaison and other part owners, recognizing the partition, and agreeing to pay the royalties accruing from each tract to the respective distributees in the partition, did not create any new duties on the part of the lessee to protect the lines of the tracts, one as against the other, by drilling offset wells. Harness v. Eastern Oil Co. (W. Va.), 38 S. E. Rep., 662; Northwestern Ohio N. G. Oil Co. v. Ullery (Ohio), 67 N. E. Rep., 494; Rymer v. South Penn Oil Co. (W. Va.), 46 S. E. Rep., 562; Ammons v. South Penn Oil Co., 35 S. E. Rep., 1011 (W. Va.); Colgan v. Forest Oil Co., 45 At. Rep. (Pa.), 119; Young v. Forest Oil Co., 45 At. Rep. (Pa.), 121.

The test as to whether a lessee should have drilled wells at a given time, is whether, at that time, and with all the lights before him, he believed, in the exercise of his judgment, exercised honestly, in good faith, or should have believed from the facts apparent to him, that the drilling of offset or additional wells would have been profitable, and not whether, as ascertained by subsequent developments, the drilling of additional wells would have proven to be profitable. Manhattan Oil Co. v. Carrell (Ind.), 73 N. E. Rep., 1084; Ammons v. South Penn Oil Co., 35 S. E. Rep., 1011; Colgan v. Forest Oil Co., 45 At. Rep., 119 (Pa.); Young v. Forest Oil Co., 45 At. Rep., 121 (Pa.); Kellar v. Craig, 61 C. C. A., 369.

A corporation chartered under the laws of this State for the accumulation and loan of money, and for the purposes for which plaintiff corporation was chartered, can not purchase and sue on a cause of action for damages. Lyons-Thomas Hardware Co. v. Perry Stove Co., 86 Texas, 143; Case v. Kelly, 133 U. S., 21 Law ed. Book, 33, 513; South & N. A. Ry. Co. v. Highland Av. R. R. Co., 24 So. Rep., 115; Transportation Co. v. Palace Car Co., 139 U. S., 24; McCormick v. Market Bank, 165 U. S., 549, L. ed., 41, 820.

*O'Brien & John* and *Greer, Minor & Miller,* for appellee.—The charge complained of instructs the jury that they may estimate the damages, or loss, if any, accruing between February 24, 1902, and March 7, 1906, on account of defendant's failure reasonably to protect the lines, or develop the premises (if they believed there was such failure); and further instructed them that they must not include in their estimate certain elements or items (not necessary here to mention) of damage. The feature of the charge complained of in the eighth assignment is that it authorized the jury to give damages for failure to develop the land and protect the lines for the year beginning March 1, 1902, and ending March 1, 1903. There was no error in such charge, because the duties arising under the original lease to Lucas, of May 14, 1900, applied, at all times, except as excused and modified by the supplemental contract of date February 24, 1902, which, by its express written terms, which were plain and unambiguous, undertook to modify the duties under the

original lease only with respect to Chaison well No. 1 for the period from March 1, 1902, to March 1, 1903; defining the lessee's limited duties for said limited period only as respects said single well, and in nowise changing the same in other respects.

PLEASANTS, CHIEF JUSTICE.—This is a suit by appellee against appellant to recover damages for the alleged failure of appellant to use due diligence in the development of a tract of 5-27/100 acres of oil land belonging to appellee and held by appellant under an oil lease, and for failure to use reasonable care to protect said leased property from drainage by oil wells operated on adjoining tracts of land.

The petition contains two counts. Under the first count damages are claimed for a failure to produce as much as 20,000 barrels of oil per month, from a well known as "Chaison well No. 1," situated on said leased premises, for the year beginning March 1, 1902. This claim is based on a contract dated the 24th of February, 1902, and providing, in substance, that the defendant should take from the well on the land as much as 20,000 barrels per month, or pay to Mrs. Clara Chaison (who then owned the leased block) as much as $400 per month, provided the said well could, by the use of reasonable diligence, be made to produce as much as 20,000 barrels of oil per month during said year. It was alleged that the defendant had negligently allowed said well to sand-up and get out of order, and had negligently failed to make the well produce as much as 20,000 barrels per month during the months of July, August, September and October, 1902, and had failed to pay to the plaintiff, the assignee of Clara Chaison, the said $400 per month for said months, except the sum of $132, and a judgment was demanded for the $1,600 less this $132.

In the second count it is alleged that the defendant's assignor leased this land, along with several other tracts, from Mrs. Clara Chaison and J. M. Hebert, joint owners, in 1900. That thereafter the land had been partitioned, and this block No. 1 of 5-27/100 acres had become the individual property of Mrs. Clara Chaison, and she became entitled to all the royalties accruing from the operation of the same. That the lease contract provided that one-tenth of all the oil produced and saved should be paid to the lessor as royalty. That the defendant entered upon said land, and produced oil, but that it did not drill sufficient wells thereon to fully develop it and make it produce as much oil as it should have been made to produce. That there were numerous wells drilled on lands immediately adjoining this tract, and that these wells drained the oil from under block No. 1, and it was the duty of the defendant to drill offset wells along the line or margin of the said block No. 1, so as to protect the wells from drainage through these adjoining wells. Damages are claimed under this count in the sum of $48,500.

Defendant answered by general demurrer and special exceptions, general denial and several special pleas. Among other special defenses, the defendant pleaded that the plaintiff was not entitled to recover any damages for failure to drill additional wells for the

purpose of making the land produce more oil, or for the purpose of protecting the land from drainage by wells on adjacent tracts, prior to March 1, 1903, because, on February 24, 1902, Mrs. Clara Chaison, who was then the owner of this tract, in order to get a larger price than the market value of oil at that time, entered into a written contract with defendant, settling all differences up to date of the contract, and up to March 1, 1902, by agreeing to accept fifteen cents per barrel for all the royalty oil accruing to her up to that date, and agreed that the defendant should not be required to take more than 20,000 barrels of oil per month from the well which was on the land at that time, during the year ending March 1, 1903, and that the defendant would pay her for the one-tenth of said 20,000 barrels per month, twenty cents per barrel, or $400 per month, during said year, provided the said well could, by the use of ordinary diligence, be made to produce that quantity of oil; the defendant claiming that, at the time this contract was made, the market price of oil was less than ten cents per barrel, and that the agreed price of twenty cents per barrel was made in consideration partly of excusing the defendant from further development during said year. The defendant further pleaded the statute of limitations as to part of the demand of plaintiffs.

There was a trial before a jury, which resulted in a verdict, under the first count, for the sum of $860, with interest, and under the second count, for $22,260.

On motion for new trial, the court having announced to plaintiff's attorneys that unless they would remit all of the verdict in excess of $12,000 the motion for new trial would be granted, the plaintiff's counsel filed a remittitur of $11,120, and thereupon the court entered a judgment for the plaintiff for the sum of $12,000 and interest, and overruled the motion for a new trial.

On May 14, 1900, J. M. Hebert and Clara Chaison executed a lease contract to A. F. Lucas. This contract of lease embraced fifty acres more or less, the east end of the John Douthit survey (which fifty acres included both the Chaison block and the Hebert block), and 500 acres, more or less, of the P. Humphries survey. It is executed by J. M. Hebert and Mrs. Clara Chaison as executrix of the estate of Jeff Chaison, deceased. This lease is in the ordinary form of oil land leases, the lessee agreeing to properly develop the land and to give the lessor one-tenth of all the oil taken therefrom. There is no express covenant as to the number of wells which shall be sunk and no express covenant that offset wells shall be sunk to protect the oil from drainage by wells on adjoining property.

On the 13th of April, 1901, Mrs. Clara Chaison, Charles J. Chaison and all the other heirs of Jeff Chaison, deceased, and J. M. Hebert, made a partition as between themselves, and by this instrument the Douthit survey embraced in the lease, is divided, and J. M. Hebert is awarded lots 2 and 4 of 5-27/100 acres each, and Clara Chaison and the heirs of Jeff Chaison, deceased, are awarded lots 1 and 3 of this Douthit tract.

On the 24th of April, 1901, Charles J. Chaison and the other children of Jeff Chaison, deceased, made a partition agreement with

Clara Chaison, by which Charles J. Chaison and the other heirs of
Jeff Chaison, deceased, released to Clara Chaison all their right,
title and interest in block No. 1, containing 5-27/100 acres of the
Douthit survey, being the land in controversy. This instrument gives
to Clara Chaison, on the 24th of April, 1901, title in severalty to
this block, as against the children of Jeff Chaison, deceased.

By these instruments, and prior to and including the 24th of
April, 1901, there was a complete partition effected between the
joint owners of the land embraced in the original lease, and Mrs.
Clara Chaison had become the absolute owner, as against all her co-
tenants, of block No. 1 of the Douthit tract.

On the 29th of April, 1901, all of these distributees and the
J. M. Guffey Company, a partnership composed of J. M. Guffey,
John H. Galey and A. F. Lucas, entered into a contract reciting
these partitions, and reciting the different tracts that each party
had been awarded, and the J. M. Guffey Company relinquishes and
releases from the lease all the premises allotted to the heirs of Jeff
Chaison, deceased, being lot 3 of the Douthit survey, and said in-
strument contains this recital:

"And it is understood that as to the lots owned by Clara Chaison,
said lease shall apply in full force and effect, and the said lessee
and his assigns thereunder shall pay all royalty to the said Clara
Chaison, her heirs and assigns, for any mineral development upon
said lot belonging to Clara Chaison under said partition. And it
is further understood that said lease applies to the above named
lots, which are set aside to J. M. Hebert in said partition, and that
he is entitled to all the royalty arising from any mineral develop-
ment upon his said lots."

Thereafter the appellant acquired the property of the J. M.
Guffey Company and became the owner of said lease. Acting under
this lease appellant commenced the development of the property in
the summer of 1901, and on August —, 1901, completed a well thereon,
known as Chaison No. 1. This well was a gusher with a capacity
of 5,000 barrels per day. The active development of the field was
going on and wells had been sunk during 1901 and the winter of
1902 on the lands adjoining the Chaison property by appellant and
other operators in the field. On the 24th day of February, 1902,
Hebert No. 2, on the Hebert tract, just south of the Chaison, was
in operation. This well was a large producer. Gladys No. 1, an-
other well operated by appellant on a tract adjoining the Chaison,
was also a large gusher, having a capacity of 8,000 barrels, per day.
The Higgins Company had a large gushing well on property north
·of the Chaison.

Prior to the date last named, Mrs. Chaison had complained at the
failure to produce more oil from her land, the amount taken from
her land prior to said date being only 71,000 barrels. At this time
the facilities for storing and marketing oil were wholly inadequate
for taking care of the production of the field and as a consequence
the price had declined to not more than ten cents per barrel and
the production was curtailed. Under these conditions Mrs. Chaison
and appellant entered into a written agreement adjusting the dif-

ferences between them and providing for the operation of Chaison
No. 1, which was the only well then on the property, for the year
commencing March 1, 1902. By the terms of this contract appellant
agreed to pay Mrs. Chaison 15 cents per barrel for her portion of the oil
already taken from the property and to take from the well then on the
property not less than 20,000 barrels per month during the year before
mentioned, and to pay her for her portion thereof 20 cents per barrel.
No change was made by this agreement in the original lease contract
other than the modifications that may be implied from the terms of
said agreement above set out. There is evidence to sustain a find-
ing that an oil well in this field at the time this contract was made
and during the continuance of the gushing period, which lasted
until the summer of 1902, would draw oil from surrounding terri-
tory for a distance of 300 feet. The wells before mentioned on the
Higgins, Gladys and Hebert tracts were in such proximity to the
Chaison property as to draw oil therefrom. The well on the Chaison
would also draw from the Higgins and Gladys tracts, the radius
from which it would draw from said tracts being equal to or greater
than that from which said Higgins and Gladys wells would draw
from the Chaison tract.

After the execution of the contract of February 24, 1902, other
wells were put down on the tracts adjoining the Chaison lease.
Only two other wells were put down on this lease, and these were
not completed until August, 1903, and February, 1904, respectively.
There is evidence tending to show that because of the failure of
appellant to drill and operate additional wells on the property in
question the amount of oil produced from the lease was much less
than it would have been had appellant used reasonable diligence
to develop it and protect it from drainage by wells on the adjoining
tracts of land.

The evidence sustains the finding of the jury that appellee was
damaged in the sum of $860 by the failure of appellant to comply
with its agreement to take 20,000 barrels of oil per month from well
No. 1 on said property during the year commencing March 1, 1902.

The appellee by purchase from Mrs. Chaison is the owner of the
leased property and assignee of her claim for damages for the alleged
failure of appellant to comply with its lease contract.

In submitting to the jury the issue as to appellee's right to re-
cover upon the second count in the petition the trial court gave the
following instructions:

"In passing on said second count, here is the rule by which you
will be guided: Estimate the amount of oil that the defendant,
within said dates, could have saved and produced by the exercise of
prudent, business-like diligence, compare this with what it did pro-
duce and save, and if you find from the evidence that the former
exceeds the latter, then the plaintiff would be entitled to a verdict
for the amount of the difference, estimated as aforesaid. But you
should not include in this estimate of the damage for loss, if any,
any shortage or deficiency, resulting from either of the following
causes:

"(1) From the operation, or failure to operate diligently, Chaison well No. 1, for plaintiff can have no recovery as respects this well, unless there was some default by defendant, during the months of July, August, September and October, 1902, or some of them, under the terms of said supplemental contract of February 24, 1902; and as respects the same, if plaintiff is entitled to recover at all, it must be under its first count, and not under its second count, and, therefore, you will consider the defaults, if any, of defendant, as respects Chaison well No. 1, only in connection with plaintiff's first count.

"(2) Any losses resulting to plaintiff or Mrs. Chaison, for failure to operate said Chaison well No. 1 with reasonable diligence and business-like prudence, and to its reasonably full capacity. Such losses, if any, can be considered only as a basis of recovery under the instructions given in connection with plaintiff's first count.

"You are further instructed in this connection that if you believe from the evidence that Chaison well No. 1 was not operated with diligence and business-like prudence, but if you further believe that had it been so operated, additional wells, or some of them, should not have been reasonably required, then you are instructed not to charge or estimate against defendant the royalty oil of any such additional well or wells, either for development or for the protection of the lines, as you may believe might have been reasonably dispensed with had Chaison well No. 1 been operated to its reasonably full capacity.

"If you believe from the evidence that had Chaison well No. 1 been operated to its reasonably full capacity, and with reasonable diligence and prudence, and that if so operated, coupled with the other development done by defendant on said Chaison lease, would together have constituted reasonable diligence and protection of said Chaison lease, you should render a verdict in favor of the defendant."

Under appropriate assignments of error appellant complains of these instructions on the ground that they authorize the recovery of damages by appellee for the failure of appellant to develop and produce oil from the leased property during the year commencing March 1, 1902, in excess of the amount required to be produced during said year under the contract of February 24, 1902.

The question raised by these assignments is the controlling question on this appeal. Appellee contends that the contract of February 24, 1902, by its express terms referred only to the operation of well No. 1, and in no way limited or modified the obligation of appellant to use due diligence to develop the property and produce oil therefrom and to this end to put down as many wells as might be necessary for the reasonable development of the property during the year covered by said contract. We do not think the contract of February 24, 1902, can be so construed. It is true the instrument by its terms only refers to the one well, but construed in the light of the conditions surrounding the parties and the subject matter at the time it was entered into, it would be unreasonable to hold that the parties to said contract did not intend by limiting the pro-

duction of this well to limit the production from the whole of the leased property. At that time there was no other well upon the property, and this well was referred to not for the purpose of distinguishing it from other wells that might be sunk on said property, but as the one source of production for the entire property. This well was capable of producing 150,000 barrels of oil per month and it would be an arbitrary following of the literal meaning of the words of the contract to hold that Mrs. Chaison in agreeing to limit the production of said well to 20,000 barrels per month did not waive her right to require appellant to produce a larger amount from the leased property during the year covered by said contract, provided the conditions under which the contract was made remained the same. Of course, if it became necessary after the execution of this contract in order to protect the lease from drainage by wells on adjoining tracts to take more than 20,000 barrels per month from this well or to sink other wells, said contract did not relieve appellant of such duty, but the charges complained of do not so limit appellant's duty. Under the evidence before them the jury might have found that if other wells had been sunk and operated upon the property during the year from March 1, 1902, to March 1, 1903, a much larger quantity of oil than that actually produced by appellant would have been produced from said property, and the charges complained of authorized them to find damages for this deficit, regardless of whether or not the increased production during said time was necessary in order to reasonably protect the property from drainage by outside wells.

While the original lease contract did not specify the number of wells that appellant should sink upon the property and did not expressly require the sinking of offset wells to protect the land from drainage, from the nature of the contract an implied obligation rested upon appellant to use reasonable diligence and care to develop and protect the property, and this obligation required it to sink as many wells as the exercise of such diligence and care would suggest under the circumstances, but such diligence would not require that additional wells be sunk for the purpose of increasing the production of oil after the lessor had agreed that the amount of production could be limited to less than one-sixth of the amount which the well on the property was capable of producing.

We shall not discuss the remaining assignments of error in detail. Other inaccuracies and omissions in the charge are complained of by appellant, but we do not think when the whole charge is considered that these inaccuracies or omissions misled the jury. As before stated, the measure of appellant's obligation under the lease contract was the use of reasonable diligence and care to develop and protect the property, and such reasonable diligence and care would be that which would be used by an ordinarily prudent person engaged in the same undertaking under like circumstance.

The charge required of appellant the exercise of "business-like diligence," and that it should have acted as a "prudent, business-like man." While we are not prepared to say that the use of these expressions in the charge were calculated to give the jury an erro-

neous idea as to the degree of diligence and care required of appellant, their use was unnecessary and any change in the well established definitions of ordinary care has been uniformly condemned by our courts. Harris v. Ohio Oil Co., 48 N. E. Rep., 502; Houston & T. C. Ry. Co. v. Smith, 77 Texas, 181.

We think appellant's participation in the partition of the property and its recognition of the several ownership of Mrs. Chaison and Hebert of the respective tracts set apart to them by said partition agreement, changed the character of its holding from that of lessee from the joint owners of the whole tract to lessee from each owner of the respective tracts. It follows from this conclusion that appellant can not be heard to complain of the portion of the charge instructing the jury as to the duty required of appellant to deal fairly with both lessors in the development of the two tracts of land.

The question of the power of appellee under its charter to purchase Mrs. Chaison's claim for damages is not one which can be raised by appellant in this case. The contract between Mrs. Chaison and appellee is an executed one, and if it be *ultra vires* on the part of appellee it is nevertheless binding on Mrs. Chaison, and appellee's right as the owner of the claim to receive any amount that may be due thereon can not be questioned by appellant.

This disposes of all of the questions presented which we deem necessary to discuss.

For the error in the charge before indicated the judgment is reversed and the cause remanded.

### ON MOTION FOR REHEARING.

After due consideration of appellee's motion for rehearing we have concluded that we erred in reversing the judgment of the trial court in favor of appellee upon the first count in the petition. The petition, as stated in the main opinion, contained two counts, each of which set out a separate and distinct cause of action. Each of these counts were severally submitted to the jury and the verdict states the amount of damages found by the jury upon each count. Neither the motion for a new trial nor any assignment of error complains of the amount found by the jury upon the first count, and the error in the charge which we think requires a reversal of the judgment only affected the cause of action set out in the second count.

While the point was not presented on the submission of the case either by the briefs or by the oral argument of counsel, we considered it before rendering our former opinion, but concluded that inasmuch as the remittitur filed by appellee was general in its terms it applied to the amount found by the jury upon both counts and we could not say what portion of the amount found under the first count was remitted, and therefore could not fix the amount for which the judgment on first count should be affirmed. Upon further consideration, however, we conclude that in view of the fact that no complaint was made in the motion for new trial of the

amount found upon the first count, the remittitur, though applying in general terms to the entire verdict, was only intended to apply to the amount found under the second count. The motion for rehearing is therefore granted to the extent that the judgment heretofore rendered reversing the entire judgment will be set aside insofar as it reverses the judgment in favor of appellee for $860 on the first count in the petition, and that portion of the judgment will be affirmed. Upon the other questions raised by the motion we adhere to our former conclusions and the motion, except as above indicated, is overruled.

*Affirmed in part and reversed and remanded in part.*