## EYSENBACH v. CARDINAL PETROLEUM CO.

No. 11474—Opinion Filed Jan. 9, 1925.

Rehearing Denied May 5, 1925.

**Oil and Gas—Assignment of Lease—Contracts to Drill as Consideration—Measure of Damages for Breach.**

Where as a part consideration of an assignment conveying certain oil and gas leases, the grantee agrees to drill one or more wells, and breaches the contract by failure to drill. the grantor's sole measure of damages is the cost of drilling the wells as provided for under the terms of the contract.

(Syllabus by the Court.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Tulsa County; Owen Owen, Judge.

Action by Cardinal Petroleum Company against O. K. Eysenbach. Judgment for plaintiff, and defendant appeals. Affirmed.

Stuart, Cruce & Bland and E. J. Doerner, for plaintiff in error.

Poe and Lundy, J. E. Curran, and R. E. Morgan, for defendant in error.

PER CURIAM. Plaintiff commenced its action against the defendant in the district court of Tulsa county, for damages based upon the alleged breach of a contract in failing to drill two oil and gas wells.

The contract sued upon bears the date of January 24, 1919, and in substance provided: Plaintiff sold and assigned its complete interest in oil and gas leases covering about 500 acres of land situated in Pittsburg county. Okla., to the defendant, upon the following conditions: (1) For the sum of $1,000 cash in hand paid, and the additional sum of $14,000 to be paid by the defendant to the plaintiff upon the approval of the title. (Title was later approved by the defendant and the further cash consideration of $14,-000 paid.) (2) The defendant agreed to commence the immediate drilling of a well on the 500. acres of land and in the event the well should produce gas in the capacity of two and a half million cubic feet, the defendant should pay to the plaintiff the sum of $5,000 additional, and upon the completion of the first well, whether same was a dry hole or produced gas in the amount above set forth. the defendant bound himself to commence drilling a second well upon said property, and if it proved to be of like production, or greater, the defendant should pay to the plaintiff the further sum of $5,-000, thus making the total purchase price the sum of $25,000. (3) It was further agreed between the parties that in the event the first well should produce not less than 50 barrels of oil per day, the defendant should pay to the plaintiff the additional sum of $10,000 on the purchase price of the leases. (4) It was further expressly provided by the terms of the contract that in no event should the total payment made under the contract equal more than $25 000 as the purchase price for the leases. (5) That with the $15,000 cash paid on the consideration, if the first and second wells were gas producers in not less than the figures named, the total payment provided for would constitute the full consideration, or if the first well should produce oil in not less than the amount named, the payment of the $10,000, plus the $15,000, would constitute full payment, or. if the first well produced gas in the amount named. and the second well produced oil in the quantity named, a payment of only $5,000 would be required. as the contract specifically provided that the total consideration should in no event exceed $25,000.

The defendant filed his answer to the action, in substance, as follows: That by reason of third parties who were strangers to the contract drilling dry wells upon adjoining properties, such development proved that the 500 acres of leases would be nonproducing property, and defendant was thereby relieved from drilling the one or more oil and gas wells provided in the contract. That the plaintiff had brought in prior to the sale and assignment of the leases to the defendant, a gas well of the capacity of about 17 million cubic feet of gas upon the acreage in question, and the defendant alleges that the plaintiff's agent, in offering the sale of the leases to him, represented to the defendant that the property was situated upon a gas dome, and would with development result in satisfactory gas production to the defendant, and relying upon these statements, the defendant was thereby induced to enter into the contract sued upon by the plaintiff. The defendant further alleged that subsequent geological surveys of the property disclosed nonbearing oil and gas formations, and therefore the statements of the plaintiff were false and fraudulent, and that he was released from drilling the one or more wells on the property, and was entitled to recover damages against the plaintiff by reason of said fraudulent statements for the consideration already paid for the property. It is apparent from the record that the agent who made the statements possessed considerable knowledge of structural formations, and was experienced in oil and gas production. The record further discloses that the defendant had engaged in oil and gas developments for some 15 or 20 years, and possessed somewhat similar knowledge about structural formations, and oil developments. The court denied the defense of fraud to the action, and the defendant has assigned as error the ruling of the court on this point.

In passing on this question it is enough to say that the record discloses that the plaintiff's agent and defendant possessed about equal knowledge concerning the subject-matter of the contract, and both stood on equal ground to pass judgment on the value of the property for oil or gas production. Therefore the representations so made by plaintiff's agent would not constitute actionable fraud in this suit, and the court did not commit error in refusing to submit this defense to the jury. Long v. Woodman. 58 Me. 49; Williamson v. Holt. 147 N. C. 515, 61 S. E. 384; Warner v. Benjamin (Wis.) 62 N. W. 179; First National Bank v. Swan (Wyo.) 23 Pac. 743.

The defendant assigns further error because the trial court refused to permit him to excuse his breach of the contract to drill the wells on the property in question by showing that the gas well then on the property had decreased in production from about 17 million cubic feet to about 2 million cubic feet, and by further showing the drilling of wells on adjacent property which were dry holes; the defendant urging that the matters he offered to prove showed conclusively that oil and gas production in paying quantities would not be found upon the property. In offering this defense the defendant overlooked his promise in writing to make or cause to be made certain explorations upon the property in question. The defendant was bound to use good faith in making such explorations, and the plaintiff had a right to hold the defendant to the requirements of the contract in this respect. Nor could the defendant excuse his failure to drill one or more wells upon the property as required by the terms of the contract because the gas well on the property at the time he purchased it had fallen off in production, and wells drilled on adjacent property were dry holes. The defendant agreed in writing to make the tests upon the property he purchased from the plaintiff, and the plaintiff had as much right to insist upon the performance of this portion of the contract as the other provisions for the sale of the property. Ardizonne et al. v. Archer et al., 72 Okla. 70, 178 Pac. 263: Chamberlain v. Parker. 45 N. Y. 569.

The defendant assigns error in that the court did not submit the proper measure of damage to the jury in the trial of this cause, and presents this question directly, and in substance through various assignments of error.

Section 2852, Rev. Laws 1910, being section 5976. Comp. Stat. 1921, provided:

"For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this chapter. is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which in the ordinary course of things, would be likely to result therefrom. No damages can be recovered for a breach of contract, which are not clearly ascertainable in both their nature and origin."

And this provision of the law, we think, clearly authorizes the recovery of damages for breach of contract, such as the one we are here dealing with. This section is quoted in the Ardizonne Case, supra, in which practically the identical question raised in the

instant case was involved, and the court announces in the second paragraph of the syllabus:

'The measure of damages for the breach of an express covenant in an oil and gas lease, to drill one well to the top of the Mississippi lime, is held, under the facts and circumstances of this case, to be the reasonable cost of drilling same."

The same rule is adhered to in the case of North Healdton Oil & Gas Co. v. Skelley, 59 Okla. 128, 158 Pac. 1180, and the cost of drilling is the sole and only measure of damages the plaintiff has and this was the rule followed by the trial court in this case, and the instruction complained of, wherein the court instructed the jury, is as follows:

"That the only issue in this case for your determination is the reasonable cost of drilling the two wells as required by the contract," etc.

—and following that instruction the jury returned a verdict for $10,000 the cost of drilling the two test wells in contemplation under the terms of the contract, as shown by the evidence offered on the trial of the case. This is the controlling issue in this case, and has been thoroughly and ably discussed by this court both in the Skelley and Ardizonne Cases. supra, and as said in the Skelley Case, in a quotation from Sutherland on Damages, vol. 2, p. 480, adopting the language of Chamberlain v. Parker, 45 N. Y. 569 and Taylor v. N. P. C. R. Co., 56 Cal. 319. in discussing the results to be obtained from the drilling of oil and gas test wells, and defense similar to the one interposed in the instant case, the author said:

"A man may do what he will with his own, having due regard to the right of others; and if he chooses to erect a monument to his caprice or folly on his premises, and employs and pays another to do it, it does not lie with a defendant who has been so employed and paid for building it, to say that his own performance would not be beneficial to the plaintiff."

And so it was in this case, under the terms of the written contract the defendant agreed to drill two wells, as a part consideration for the assignment of the leases. and while plaintiff had no further interest in the leases assigned and upon which the test wells were to be drilled, he was interested in leases covering more than 1,000 acres of land intermingled with and adjacent to the lands cov-

ered by the assignment, and hence had a direct interest in the test wells, and in this particular, distinguishes the instant case from the Chamberlain-Parker Case, where it was held that the cost of drilling was not the correct measure of damages, because the plaintiff had no interest to be affected by the drilling of the test well, and aside from all of these considerations, the drilling of the test well was a material part of an express consideration, and the fact that conditions changed, or the defendant changed his mind as to the likelihood or probability of discovering oil and gas, is of no concern. The plaintiff had paid the defendant by reason of the assignment of the leases to drill the wells, and in the event of his failure to comply with the terms of the contract, he should respond in damages in such amount as the drilling of the wells would cost. As shown by the evidence, this is the only measure of damages that is direct and capable of computation. All other damages that may result by reason of the payment of rentals, the acquirement of other leases adjacent to the test, and the prospective profit in case production is discovered in paying or specified quantities. are entirely too remote to be considered. In so far as the payment of rentals on leases is concerned. they are paid by reason of the provision of the lease contract, and as a consideration for an extension of time as provided for, and was in full force and effect prior to the execution of the drilling contract. And when paid. a valuable consideration passes under the terms of the lease contract, to wit, an extension of the lease, and no damage arises which may be recovered by law. where the lessee received all that he is entitled to under the terms of his contract. and whether it be a thing of value or not is of no concern. Unless the drilling contract by its terms refers to the lease contract and the rentals to be paid, and assumes payment of the rentals, or in some way relieves the lessee from such liability, the payment of rentals should not be regarded as creating any liability on the part of the drilling contractor, as an element of damages in case of a breach of the drilling contract.

We, therefore find no merit in the error complained of, and recommend that the case be affirmed.

By the Court: It is so ordered.