**SIMMS OIL CO. v. COLQUITT. (No. 9666.)\***

(Court of Civil Appeals of Texas. Dallas. Oct. 30, 1926. Rehearing Denied Dec. 11, 1926.)

**1. Mines and minerals ⊚➛74—Assignee of oil lease under assignment providing for partial payment from oil marketed from lease held obligated to drill for oil.**

Assignee of oil lease under assignment providing for payment of partial consideration out of oil marketed off of lease *held* to have obligated itself to drill for oil in order to pay consideration as stated.

**2. Mines and minerals ⊚➛74—Assignee of oil lease agreeing to make partial payment in oil from lease may not postpone drilling under terms of original lease.**

Assignee of oil lease, providing for partial payment of oil marketed from lease, *held* not to have had right under original lease to postpone drilling in accordance with provisions thereof, since impliedly agreeing to drill within reasonable time in good-faith effort to produce oil for payment of consideration.

**3. Contracts ⊚➛168—Implied provisions of contract are to be read into and become part thereof as though expressly set forth therein.**

When an implied obligation is established, the contract is to be construed as a whole, and implied provisions are to be read into and become part of contract as though expressly set forth therein.

**4. Mines and minerals ⊚➛78(1)—Express obligation to drill for oil cannot be excused by assumption that land involved is probably nonproductive.**

Express obligation to drill land for oil cannot be excused by assumption on part of obligator, based on result of drilling adjacent or surrounding lands, that land involved is probably nonproductive.

**5. Mines and minerals ⊚➛74—Assignee of oil lease, impliedly agreeing to drill, may not excuse drilling by showing futile efforts on adjacent and surrounding lands.**

Assignee of oil lease, impliedly agreeing to drill for oil within reasonable period in view of terms of assignment requiring part payment in oil, *held* not excused from drilling in good-faith effort to produce oil by showing futile efforts to produce oil in paying quantities on adjacent and surrounding lands.

**6. Mines and minerals ⊚➛74—Damages, for assignee's failure to drill is amount of consideration agreed to be paid from oil marketed from lease.**

Measure of damages for failure of assignee of oil lease to drill for oil as impliedly agreed under provision requiring partial payment in oil is amount of such payment required to be made to assignor from oil marketed therefrom.

On Motion for Rehearing.

**7. Mines and minerals ⊚➛74—Evidence held to establish value of oil lease at time of assignment.**

Evidence in action against assignee of oil lease for failure to drill *held* sufficient to establish value of property at time of assignment.

Appeal from District Court, Dallas County; Claude M. McCallum, Judge.

Suit by O. B. Colquitt against the Simms Oil Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Thomas A. Knight and Thompson, Knight, Baker & Harris, all of Dallas, for appellant. Bailey & Bailey, of Dallas, for appellee.

LOONEY, J. O. B. Colquitt and J. N. Graves were lessees in a mineral, oil, and gas lease to 160 acres of land in Young county, executed by A. L. Owens and wife, as lessors. The following excerpt is from that instrument:

---

"It is agreed that this lease shall remain in force and effect for the term of five years from date and as long thereafter as oil or gas or either of them is produced therefrom by the party of the second part. * * * The party of the second part agrees to commence operations for drilling a well on said premises within eight months from the date hereof, or pay rental at the rate of 50 cents per acre per year while such commencement of operations for drilling a well is delayed; and it is agreed that the completion of a well shall be and operate as a full liquidation of all rent under this provision during the remainder of the term of this lease. A dry hole shall be deemed a completed well hereunder, and removal of casing and other improvements in such event shall not operate as an abandonment or forfeiture of any rights of second party under this lease."

Colquitt and Graves divided this leasehold estate into four 40-acre tracts, Colquitt accepting in such partition the estate in so far as it related to the southeast and the northwest tracts.

Appellant acquired from Colquitt, under separate and distinct assignments, the leasehold estate in both tracts. The instrument assigning the northwest 40 acres, the tract involved in this suit, contains the following:

"Now, therefore, for and in consideration of seven thousand dollars ($7,000.00) cash in hand paid by Simms Oil Company, the receipt of which is hereby acknowledged, and seven thousand dollars ($7,000.00) to be paid out of one-half (1/2) of seven-eighths (7/8) of the first net oil produced and marketed off of the hereinafter described premises, the undersigned, the present owner of the said lease and all rights thereunder or incident thereto, in so far as the tract hereinafter described is concerned, does hereby bargain, sell, transfer, assign and convey all rights, title and interest of the original lessee and present owner in and to said lease and the rights thereunder, insofar as it covers the so-called northwest quarter (N. W. ¼) of the J. A. Harkness survey above described, this so-called northwest quarter being a parallelogram, containing 40 acres of land, more particularly described as follows: [Here follows description of the 40 acres.] Together with all personal property pertaining thereto or used in connection therewith, to Simms Oil Company, and its successors and assigns."

The evidence showed that a reasonable time within which appellant should have begun drilling operations on the land in an effort to produce oil from which to pay the deferred consideration mentioned in the assignment expired on June 1, 1922; that appellant failed and refused to drill the land, in fact abandoned the lease prior to the institution of this suit. The lease was at the time of the assignment reasonably worth $14,000, the amount for which it was sold. Because of the failure and refusal of appellant to attempt to produce oil from the lease out of which to make the deferred payment, appellee brought this suit.

The case was tried before a jury, and at the conclusion of the evidence moved for an instructed verdict, on the idea that the assignment of the lease carried with it an implied obligation on the part of appellant to attempt to produce oil by drilling on the 40-acre tract; that reasonable time had elapsed for the performance of said obligation, and, appellant having wholly failed and refused to begin operations with the view of producing oil therefrom, appellee was entitled to an instructed verdict in his favor. This motion was sustained, the jury instructed accordingly, and as instructed returned a verdict for appellee, and the judgment appealed from was rendered thereon.

The material questions urged by appellant for reversal, are:

(1) That no obligation on the part of appellant to drill for oil on the lease can be implied, because (a) the language used in the instrument of assignment does not justify the implication; and (b) because appellee, under the original lease from Owens and wife, had the right to postpone drilling by paying a specified rental, and that appellant, as his assignee, had the same right.

(2) Appellant further contends that, even if the assignment carried an implied obligation to drill, it was not required to do so, because from futile efforts to obtain oil by drillings on contiguous and adjacent territory it was apparent that drilling the land in question would have been a vain, useless, and expensive operation.

(3) It is further contended that if there existed an implied obligation to drill, it was incumbent on appellee to establish the measure of his damages for its breach, and, failing in this, he was not entitled to recover.

These questions will now be discussed.

[1] Colquitt sold his entire interest in the 40-acre lease for $14,000, its value at that time. One-half of this consideration was paid in cash, and the other half was to be paid in oil marketed off of the lease. The oil necessary to pay the deferred consideration could have been produced only by drilling a well or wells on this land. It follows, therefore, in our opinion, that appellant obligated itself to drill for oil on the 40-acre tract to that end.

[2] It is insisted, however, that as Colquitt had the right under the original lease from Owens and wife to postpone drilling to the end of the lease by the payment of a specified rental, appellant, as his assignee, acquired the same option. We cannot assent to this proposition. The original lease from Owens and wife to Colquitt and Graves, and the assignment from Colquitt to appellant, are distinct contracts. We are now dealing with the terms of the latter, which by agreement of the parties changed the option to drill, as contained in the original lease, to an obligation to drill within a reasonable time.

Colquitt, in the assignment of this lease,

had· the right to exact drilling terms more onerous than those contained in the original lease, and when agreed to by appellant, as we find by implication they were, the milder terms of the lease, so far as concerned appellee, were· superseded. Under the lease, drilling could have been postponed to the end by the payment of a small annual rental. We are of the opinion, therefore, that it is unreasonable to assume ·that either party to the assignment intended that the production of oil from the land out of which to· pay the deferred consideration, which represented half the value of the estate and was the only remaining interest in the estate retained by Colquitt, should depend on such a slender thread. On the contrary, we find that it was impliedly agreed that the 40 acres should be drilled within a reasonable time in a good-faith effort to produce oil to pay the deferred consideration. Such agreement is just such as in all fairness appellant should have made.

Appellant contends, however, that the decision of the San Antonio Court of Civil Appeals in Greenwood & Tyrrell v. Helm, 264 S. W. 221, should be decisive of this question in its favor. We fail to find a conflict between the decision of the court in that case and our holding in the instant case. The facts are different. In that case, Judge Smith well said:

"To warrant. such implication the contract must be such as reason and justice dictate, and which the law may safely presume the parties undertook to perform. The situation of the parties, the nature and hazards of the undertaking, the circumstances surrounding the whole transaction, and the justness and reasonableness of the obligation to be implied, must point with reasonable certainty to an intention of the parties to bind the assignees to an unconditional obligation to drill the land for the· purpose of producing sufficient oil to yield the additional consideration of $3,200."

In applying these rules in that case, the court concluded, as a fact, that there existed no implied agreement on the part of the assignees to drill the land for oil out of which to pay the deferred consideration.

It is obvious that the San Antonio court was well within its province in resolving the facts as it did, and its finding, in this respect, was final and binding on the Supreme Court. No express agreement on the part of the assignees to drill the land for oil existed, and, as the court found from the facts and circumstances that there was no implied obligation to drill, the rights of the parties as to drilling were controlled exclusively by the terms of the original lease, hence the decision gained no strength as an authority by the refusal of the writ of error by the Supreme Court.

Appellant takes the further position that even if the assignment carried an implied obligation to drill that appellant was not required to comply for the reason that it was apparent from futile efforts to obtain oil by drillings on contiguous and adjacent territory that it would have been·vain, useless, and expensive to drill the land in question.

[3] The only distinction between an express and an implied contract rests in the mode of proof. One is established by direct and the other by indirect evidence, but when an implied obligation is established, as we find in this case, the contract is to be construed as a whole, and the implied provisions are to be read into and become a part of the contract as though expressly set forth therein. Jones & Co. v. Gammell, etc., 100 Tex. 320, 332, 333, 99 S. W. 701, 8 L. R. A. (N. S.) 1197; 4 Page on Contracts, § 2042, ·p. 3530; 2 Elliott on Contracts, § 1628.

[4] The rule seems to be well settled in this state that an express obligation to drill land for oil cannot be excused by an assumption on the part of the obligor, based on the result of drilling adjacent or surrounding lands, that the land involved is probably nonproductive, and that it would be vain, profitless, and expensive to drill thereon. See Eysenbach v. Cardinal Petroleum Co., 110 Okl. 12, 236 P. 10; Empire Gas & Fuel Co. v. Pendar (Tex. Civ. App.) 244 S. W. 184; Cotherman v. Oriental Oil Co. (Tex. Civ. App.) 272 S. W. 616; T. P. Coal & Oil Co. v. Barker (Tex. Civ. App.) 252 S. W. 809, 812; Covington Oil Co. v. Jones (Tex. Civ. App.) 244 S. W. 287.

[5] We therefore hold that appellant was not excused from doing the thing it agreed to do—that is, to drill the 40 acres in question in a good-faith effort to produce oil out of which to pay appellee the deferred consideration—by showing futile efforts to produce oil in paying quantities on adjacent and surrounding lands.

The question here presented, in legal effect the same as the questions involved in· the cases cited, that were based on express covenants to drill, should not be confused with the doctrine announced in cases brought for the cancellation of leases or for damages based on the breach of an implied covenant to fully develop the premises or to properly protect the land from drainage. In cases of this nature the issue to be determined is one of reasonable diligence and care to fully develop or to protect the property. Whether or not such a degree of diligence is exercised by the party on whom the obligation rests may depend on a variety of circumstances, such as the quantity of oil and gas capable of being produced from the land, as indicated by prior explorations, the extent and result of operations on adjacent lands, the character of the reservoir, etc. Whatever, under the circumstances of a particular case, would be expected of. operators of ordinary prudence, having due regard to the interests of

both parties, is exacted, and a disregard of this duty would constitute a breach of the implied covenant. The question involved in such a case is entirely different from the question involved in the instant case, as illustrated in the following: Guffey Pet. Co. v. Jeff Chaison Townsite Co., 48 Tex. Civ. App. 555, 107 S. W. 609; Pelham Pet. Co. v. North, 78 Okl. 39, 188 P. 1069; Goodwin v. Standard Oil Co. (C. C. A.) 290 F. 92; Allen v. Colonial Oil Co., 92 W. Va. 689, 115 S. E. 842; Grass v. Big Creek Dev. Co., 75 W. Va. 719, 84 S. E. 750, L. R. A. 1915E, p. 1069.

[6] This brings us to the last question, the measure of damages. The rule announced by the Galveston court in Empire Gas & Fuel Co. v. Pendar (Tex. Civ. App.) 244 S. W. 184, 191, 192, is to the effect that the measure of damages in such cases is the amount the obligor agreed to pay out of oil where it is shown that he refused to make any attempt to perform the obligation. This rule was approved by the Amarillo court in Harris v. Wheeler, on rehearing (Tex. Civ. App.) 255 S. W. 206, 211, 212. The Supreme Court granted a writ of error, but the Commission of Appeals on reversal recognized the correctness of the rule as just stated. 267 S. W. 465, 466.

We therefore hold that the correct measure of damages was applied in this case. After considering appellant's assignments and propositions and finding no error in the judgment of the court below, the same is affirmed.

### On Motion for Rehearing.

In our original opinion we announced the following conclusion, to wit:

"The lease was at the time of the assignment reasonably worth $14,000, the amount for which it was sold."

Further in the opinion we say:

"Colquitt sold his entire interest in the 40-acre lease for $14,000, its value at the time."

The correctness of this conclusion is challenged by appellant in written argument supporting its motion for rehearing, in the following language:

"If the court meant to find that at the time of the contract between appellee and appellant the lease was worth $14,000 in cash, such is not the testimony, and certainly not the undisputed testimony, in the record, and the court should amend its finding in this respect to conform to the record."

[7] Responding to this challenge, we call attention to the testimony of appellee, the only witness who expressed an opinion as to the value of the lease at the time of the sale. He said:

"At the time of the sale to the Simms Company, I considered the agreed price a fair value."

He also testified to a circumstance touching the value of the lease, as follows:

"Before we got the abstract covering the second tract cleared up and accepted by the Simms Oil Company, I was asked if I would take $20,-000 for the lease and I had to answer the party making the offer that I had already sold to the Simms Oil Company. I had agreed to sell it to them. They had not given me any evidence in writing that they would accept it, as they had done on the first tract, but I considered myself bound under my verbal contract and agreement with them and therefore I had to refuse a better price."

This witness could have been, but was not, cross-examined in regard to the responsibility of the person making the offer, or as to whether it was an offer to purchase for cash or for oil to be produced, or as to the nature of the offer—that is, whether it was a bona fide offer to buy or was made by an agent feeling out the situation. No attempt was made to weaken the testimony of this witness by cross-examination, hence the fact as established by this evidence stands that a short time after appellee agreed to sell the lease in question to appellant for $14,000, half cash and half to be paid in oil, he was offered, by a person desiring to buy, $20,000 for the same property.

In addition to this, the parties agreed that the property was of the value of $14,000, as shown by the recited consideration in the assignment. The evidence, in our opinion, justified the conclusion; in fact, we are at a loss to understand how any other could have been reached.

After carefully considering appellant's motion for rehearing, argument and supplemental citation of authorities in support thereof, we find no reason to change the decision heretofore announced; therefore the motion for rehearing is overruled.