## LORRAINE PETROLEUM CO. et al. v. BARTLETT.

No. 18747. Opinion Filed May 14, 1929.

Rehearing Denied Sept. 10, 1929.

Rollin E. Gish, for plaintiffs in error.

Moss & Young and Branine & Branine, for defendant in error.

JEFFREY, C. This is an appeal from a judgment rendered in the district court of Tulsa county in favor of W. N. Bartlett. as plaintiff, for the sum of $10,000, as liquidated damages, and against the Lorraine Petroleum Company, Gray Oil Company, and Peer Oil Company, as defendants. On February 21, 1916, Tommy, a restricted Seminole Indian, executed a departmental oil and gas lease on his allotment, consisting of 120 acres of land in Seminole county, which included the northeast quarter of the northeast quarter of section 25, township 6 north, range 7 east. This lease was for a period of ten years from date, and as long thereafter as oil or gas was produced therefrom. The lease was duly approved by the Secretary of the Interior, and prior to June 14, 1924, plaintiff became the owner of that part of the lease covering the 40 acres hereinabove described. And prior to said date, Tommy conveyed the fee title to his allotment to one C. C. Logan, and thereafter said land was unrestricted. On June 14, 1924, plaintiff entered into a written contract to sell his interest in the lease on the 40 acres to the defendants for the consideration of $10,000 cash, the reservation of a 1/24th overriding royalty interest free from expense of drilling and operating said lease, and for an agreement of the defendants to drill a well on said land. The lease was duly assigned and the cash payment was made. That part of the contract about which a dispute has arisen is as follows:

"1. It is agreed that the parties of the second part will commence a well for oil and gas by spudding in on the land covered by said lease on or before the 19th day of June, 1925, and continue the drilling of said well with due diligence to completion, said well to be drilled to the Smith sand, which is found in that locality at approximately the depth of 3.250 feet, unless oil or gas is found in paying quantities at a lesser depth.

"2. The parties agree that to fix the amount of actual damages sustained by party of the first part by the failure to drill said well by second parties would be impracticable and extremely difficult, and it is therefore agreed by the parties that the sum of $10,000 shall be presumed to be the actual amount of damages sustained by party of the first part of such failure to drill said well, and said parties of the second part hereby agree to pay said sum upon such failure to drill said well.

"3. It is expressly agreed that upon payment at any time by parties of the second part to party of the first part of said sum

of $10,000 agreed upon as the amount of sustained damages in case of breach as above set out, the parties of the second part shall be relieved of and from any obligation with reference to the drilling of said well."

At the time the contract was made, there were no wells either drilled or in the course of drilling on any part of the entire 120-acre lease. Plaintiff did not own any interest in any part of the lease, except the 40 acres described, but the remaining 80 acres was owned by the Producers & Refiners Corporation, which appears to be a subsidiary of the Prarie Oil & Gas Company. After the making of the contract, the Prairie Oil & Gas Company drilled two wells on the remaining 80 acres to the oil producing sand. Both wells were considered light producers, but at the time of the trial were still producing about six barrels of oil per day. No well was ever drilled or commenced on the 40 acres in question, and this action was commenced by plaintiff to recover the damages agreed upon. Defendants denied that plaintiff had sustained any damages by reason of the breach of the contract, and contended that under the facts the provision for the payment of the sum as liquidated damages was invalid and unenforceable.

The cause was tried to the court without a jury, and the evidence consisted of an agreed statement of facts, together with the parol testimony of plaintiff. There was no dispute as to any material fact, but the issues involved only questions of law. The trial court found in favor of plaintiff, and rendered judgment in his favor for the sum of $10,000, as per the terms of the written contract. A motion for new trial was duly overruled, and defendants have appealed.

Counsel for defendants predicates his principal argument for a reversal of the judgment of the trial court on the general proposition that plaintiff is limited in his damages for the breach of the contract to an amount that is compensatory only; and that sections 5976 and 6014, C. O. S. 1921. preclude such a recovery as was allowed in this case. We agree with the first part of the proposition, but not with the latter. In disposing of the several questions raised by the appeal, it may be helpful to first determine what would have been plaintiff's proper measure of damage for the breach of that part of the contract providing for the drilling of a well to the Smith sand unless oil or gas be found in paying quantities at a lesser depth, in the absence of any stipulation as to what such damages should be. It is not contended that there was no breach

of the contract in this particular, but it was stipulated in the trial court that no well was ever commenced or drilled on the land covered by the assignment from plaintiff to defendants. It appears from the contract beyond question that a part of the consideration for the assignment of the lease was the agreement on the part of the defendants to drill a well as therein provided. Plaintiff retained a 1/24th interest in the minerals to be derived from drilling, in case such minerals should be found. So it will be seen that he retained a beneficial interest in the lease and the wells to be drilled thereon. It has become a settled rule in this jurisdiction that, in such cases, the measure of damages for failure to drill a well as provided by the contract is the reasonable cost of drilling the same. Ardizonne et al. v. Archer et al., 72 Okla. 70, 178 Pac. 263; Newman v. Roach et al., 111 Okla. 269, 239 Pac. 640; Cosden Oil & Gas Co. v. Moss et al., 131 Okla. 49, 267 Pac. 855; Eysenbach v. Cardinal Petroleum Co., 110 Okla. 12, 236 Pac. 10; Okmulgee Producing & Refining Co. v. Baugh, 111 Okla. 203, 293 Pac. 900.

Counsel attempts to distinguish these cases from the case at bar, but we are unable to see the distinction contended for. There are some authorities to the effect that, where the party seeking damages would have no beneficial interest in the lease to be drilled on, or in the well if drilled, then the measure of damages would not be the reasonable cost of drilling the well. The parent case so holding seems to be Chamberlain v. Parker, 45 N. Y. 569, which has been discussed and distinguished from a case of this character in several opinions of this court. It has no application to the facts of this case and need not be discussed further. It should be sufficient to say, as was said in the Ardizonne Case, that defendants having been compensated to drill a well, and having engaged to do so, it does not lie within their mouths to say that to do so would not benefit plaintiff. Under the evidence the well was to be a test well, and the primary purpose for drilling it was to ascertain whether oil or gas could be found, and the costs of drilling such a well would certainly be compensatory in its nature to plaintiff for the detriment caused by the failure to drill the well as contemplated by section 5976, C. O. S. 1921. and does not offend section 6014. C. O. S. 1921. requiring that damages must be reasonable.

The drilling of the wells on the remaining 80 acres by the Prairie Oil & Gas company saved the lease from lapsing on the entire

120 acres, but this did not excuse defendants from drilling a well on the 40 acres as they had expressly agreed to do.

It is contended that if the proper measure of damages for the breach of the contract in question is the reasonable cost of drilling the well, such damages are susceptible of being ascertained with reasonable certainty, and that by reason thereof the amount stipulated in the contract as liquidated damages cannot be recovered as such. Section 5068, C. O. S. 1921, provides that every contract, by which the amount of damages to be paid, for a breach of an obligation, is determined in anticipation thereof, is to that extent void, except as expressly provided by section 5069. The latter section is as follows:

"A stipulation or condition in a contract, providing for the payment of an amount which shall be presumed to be the amount of damage sustained by a breach of such contract, shall be held valid, when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage."

It is under the latter section that the stipulation with reference to liquidated damage is sought to be sustained. It will be noted that paragraph one of the contract set out above provided that the well is to be drilled to the Smith sand, which is found in that locality at approximately the depth of 3,250 feet, unless oil or gas is found in paying quantities at a lesser depth. Had defendants undertaken to comply with the terms of their contract, in this particular, and encountered oil or gas in paying quantities at a lesser depth than 3,250 feet, or at a lesser depth than the Smith sand, this would have fully satisfied the requirements of the contract. The evidence does not disclose whether at the time of the trial any oil or gas bearing sands had been encountered at a lesser depth than the Smith sand. However, plaintiff testified that one well about a quarter of a mile north of his lease had been drilled to about 1,950 feet, and that it produced about 100 barrels of oil per day for a short time. The record also shows that the depth at which the Smith sand could be reached over a rather limited area varied considerably. The evidence also shows that the lease was located in what is commonly called wildcat territory at that time; and that the formations were uncertain in kind and quantity. As was stated in the case of McAlester v. Williams, 77 Okla. 65, 186 Pac. 461:

"If in these circumstances the parties may not agree upon the payment of an amount which shall be presumed to be the amount of damages sustained for breach of an obligation, it is difficult to perceive any field whatever for the operation of the statutes authorizing such contracts."

The well was never drilled, and until it should be drilled, it is impossible to know, from the very nature of the case, what it would cost to drill it. It was agreed at the trial that at all times since the making of the contract in question it would have cost more than $20,000 to have drilled a well to the Smith sand. There is no other evidence in the record at to what the cost of drilling would have been. It would appear that there was little likelihood that a paying well could have been drilled on the lease in question for the amount agreed upon as the estimated damages. But that makes but little difference, since it clearly appears from the contract that the amount agreed upon was intended to compensate for the failure to drill a well, and since the contract could have been complied with by discovering oil or gas in paying quantities at any depth. Section 5069, supra, was no doubt, enacted to relieve against an uncertainty such as here exists, and we think there could be no doubt that, from the nature of the case, it would be impracticable and extremely difficult to fix the actual damages sustained by plaintiff. We therefore conclude that this provision of the contract comes within the terms of section 5069, supra, and is a valid and enforceable provision of the contract.

It is next contended that the provision for liquidated damages in the contract is, in substance and effect, a penalty, and for that reason should not be upheld. The question of whether such an amount stipulated should be treated as liquidated damages, or as a penalty, is a question of law to be determined from the language and subject-matter of the contract, the evident intention of the parties, and all the facts and circumstances under which the contract was made. McAlester v. Williams, supra; 2 Elliott on Contracts, sec. 1559. Several elements enter into the determination of the question, one being, Is the amount stipulated so disproportionate to the supposed actual damage that it could not be inferred that the parties had in mind compensating the injured party for his loss by reason of the breach? In the McAlester Case, Mr. Justice Kane gives a very illuminating discussion on the subject. Several rules, employed in determining whether such a sum is a penalty or liquidated damages, are discussed in that opin-

ion, as well as in numerous other cases cited by counsel for defendants. However, the McAlester Case concludes the discussion as follows:

"Formerly, there were a great many rules or tests resorted to by the courts to aid them in determining whether the sum mentioned in the contract was to be considered as liquidated damages, or as a penalty, but the principal rule relied upon for guidance was always the one now prescribed by the statute, supra, that when the actual damages which may result from a breach of a contract are in their nature uncertain and cannot be measured with any degree of accuracy, the sum agreed to be paid by the party in default will be regarded as liquidated damages."

Clearly, under the contract, it was intended that the sum specified should be treated as the cost of drilling a well. In paragraph 3 of the contract quoted above, it is provided that defendants had the option of paying the stipulated sum of $10,000, and thereby relieve themselves from any further obligation with reference to drilling the well. Under the evidence, the amount stipulated probably falls short of the actual damage sustained, but it is not so disproportionate in the light of all the facts to discredit the idea that the sum was intended as damages and not a penalty. We are supported in our holding on this point by the following authorities: Garr v. Minnick, 100 Okla. 109, 228 Pac. 481; Beaty et al. v. Armstrong, 95 Okla. 109, 218 Pac. 516; Board of Ed., City of Sapulpa, v. Broadwell, 117 Okla. 1, 245 Pac. 60.

Counsel for defendants cite numerous cases to the effect that where an agreement provides for the performance of one or more acts, and the stipulation is to pay the same gross sum for partial as for a total or complete breach of performance, the sum will be construed to be a penalty. In the case at bar, the contract did provide that defendants should commence a well for oil and gas by spudding in on or before the 19th day of June, 1925, and continue the drilling of said well with due diligence to completion. But in each instance, where the sum stipulated as damages is referred to, it is in connection with the failure to drill the well, and not a delay in commencing the well. The sum is expressly stated to be the amount of damages sustained by plaintiff in case of failure to drill the well. The only bearing that the provision for the commencing of the well on June 19th has upon the contract is, it tends to fix a time as to when the well shall be drilled. The

authorities cited by counsel for defendants have no application to the facts in this case. We conclude that the sum stipulated was not a penalty, but was liquidated damages, compensatory in nature and should be upheld.

Counsel for defendants calls attention to the fact, in the course of his argument, that the judgment of the trial court allowed interest from June 19, 1925, but does not ask that the judgment be modified in this particular. Under such circumstances, we decline to pass upon the question of whether interest should begin to run as of the date the well should have been commenced according to the contract.

The judgment of the trial court is affirmed.

BENNETT, HERR, DIFFENDAFFER, and HALL, Commissioners, concur.

By the Court: It is so ordered.