GEORGE W. SEWARD *et al.* v. DORA B. SEWARD.

**No. 10666.**

1. JURY TRIAL—*controversy over fund in court, held proper for.* Where two opposing parties claim the legal title to a sum of money paid into court by a third, the action is properly triable by a jury.

2. PROOF OF FRAUD—*proof of intent to commit is not.* Proof of intent to perpetrate a fraud is not equivalent to proof of the perpetration of it.

3. UNDUE INFLUENCE—*not inferable from act itself, unless such as one of sound mind would not be likely to do in free exercise of judgment.* In an action involving the validity of an act of a person of enfeebled mind, which the plaintiff charges was procured by fraud and undue influence, in order that the nature of the act may be held sufficient of itself to justify the conclusion that the party performing it was unduly influenced, or overcome by fraud, it must be such as a person of sound mind in the free exercise of his judgment would not be likely to do. Where the act itself is entirely reasonable and proper under the circumstances, it furnishes no basis for an inference that it was procured by fraud or undue influence. ·

4. ——— *honest advice of trusted friends, to one ill and infirm but capable of fully understanding nature of act, to do a reasonable and proper thing, is not.* The acts of a person who is ill and infirm, but yet capable of understanding fully the nature of what he does, cannot be avoided merely because his near friends and relatives in whom he places especial confidence advise their performance, or fairly and honestly exert their influence to that end. In order to avoid such acts the influence must be unduly exerted for the purpose of obtaining that which the party influenced, if allowed to exercise his own free judgment, would not have granted.

Error from Lyon District Court. W. A. Randolph, Judge. Opinion filed May 7, 1898. *Reversed.*

*L. B. & J. M. Kellogg,* for plaintiffs in error.

*J. Harvey Frith* and *Madden Brothers,* for defendant in error.

ALLEN, J. This action was brought by Dora 'B. Seward, as plaintiff, against the Grand Lodge of the

Ancient Order of United Workmen, the First National Bank of Emporia and George W. Seward, to recover the amount of a beneficiary certificate issued by the Grand Lodge on the life of her husband, Henry R. Seward. It was alleged in the petition that the Bank and George W. Seward claimed some interest in the beneficiary certificate, but the plaintiff denied the validity of such claim. George W. Seward and the Bank filed a joint answer, admitting that the Grand Lodge issued the beneficiary certificate set out as an exhibit to the plaintiff's petition, but averring that, in the forenoon of September 10, 1895, the day on which he died, H. R. Seward, in accordance with the rules of the order, revoked the direction made by him as to the payment of the beneficiary fund due on his death, and surrendered that certificate, which was duly canceled by the lodge, and that a new certificate was thereupon issued by the lodge, in which George W. Seward was named as beneficiary. A copy of the new certificate was attached to the answer.

The plaintiff replied that the revocation of the first certificate, if made, was made when Henry R. Seward was, by reason of illness and impaired mental powers, incapable of executing or consenting to the execution of the same, and that his signature to the revocation of the direction in the first certificate was obtained by fraud, duress and undue influence exercised by the cashier of the bank, George W. Seward, and Dr. Belle Seward, his sister. After the commencement of the action, under a stipulation entered into by the parties, the Grand Lodge of United Workmen paid into court two thousand dollars, the amount of the certificate, and was discharged from all further liability in the case. The action was then tried on the original pleadings as a suit between the plaintiff on one side and George W. Seward and the Bank on the other, to de-

termine which should have the money. The jury returned a verdict in favor of the plaintiff, on which judgment was entered in her favor for two thousand and forty dollars, the forty dollars being interest which accrued on the money subsequent to its payment into court. George W. Seward, the Bank, and the Grand Lodge, all join as plaintiffs in error.

Counsel for the defendant in error urge numerous objections to the consideration of the case in this court. The first point made is that the action was in substance an equitable one, to set aside the written instrument by which H. R. Seward was claimed to have revoked the direction in the first certificate as to the payment of the fund. A motion for a new trial was filed within due time after the rendition of the verdict, and was overruled by the court. No other motion for a new trial was filed after the entry of the judgment. The contention is that the verdict was not a complete determination of the issues of fact; that, being an equitable action, it was necessary for the court, also, to pass on the testimony, and that the motion for a new trial filed before it had done so was premature. This contention, though ingenious and plausible, does not rest on a substantial foundation. The action, as originally brought, was for the recovery of money only on the beneficiary certificate, and was properly a jury case. After the money was paid into court by the Grand Lodge, it became a controversy as to the title to the funds, and was still a controversy properly triable to a jury. The question at issue was which party owned the money which had been paid into court. Even if this were not so, the court and all parties treated the case as one properly triable by a jury, and the motion for a new trial was considered and passed on by the court, with-

1. Controversy over fund in court triable by jury.

out objection on the part of the plaintiff, as if filed at the proper time. It would be exceedingly technical and unfair to now treat it as premature. We think the criticism on the specifications of error are unwarranted. We have had no difficulty in learning from the brief just what errors are relied on. The third objection to the consideration of the case is also too narrow and technical to have force. The word "defendant," in the order granting leave to make a case, will be read "defendants"; for the trial judge, in settling and signing the case, made by the attorneys for the defendants, has interpreted it as having that meaning. The joinder of the Grand Lodge as plaintiff in error seems unnecessary, but, if so, it constitutes no ground for refusal to consider the case. Neither is there any force in the claim that the Bank had no right to join in the motion for a new trial and that it had no interest in the case. Both the Bank and George W. Seward were brought into the case as defendants, and they answered jointly. The court would have had no right to overrule the motion for a new trial on the ground that the Bank had no right to join in it. None of the objections to the consideration of the case are valid.

It was admitted by all parties that, on the morning of the day of his death, H. R. Seward signed a written direction, indorsed on the original beneficiary certificate, revoking the direction therein contained requiring the payment of the fund to his wife, and authorizing the payment to be made to his brother, George W. Seward. It is also admitted that the plaintiff gave her consent in writing to the change, though this appears to have been unnecessary under the rules of the order. The testimony to support the charge of fraud, undue influence, and mental incapacity of H. R. Seward, is very weak. It appears that he was a book-

keeper employed in the Bank. On the thirtieth or thirty-first day of August he was taken with a severe attack of heart disease, from which he never recovered. His physician recommended a change of climate. It was finally determined that he should go back to his old home in Marengo, Illinois, with his sister, Dr. Belle Seward, who resided there. For the purpose of obtaining money to defray his expenses on the trip, he sent, by his wife's daughter, a check, for $110, drawn on the Bank, which she presented for payment. He was then indebted to the Bank in a considerable sum, and payment of the check was refused. Afterward, George W. Seward, executed to the Bank his note for $2000, signed also by H. R. Seward, for the debt of Henry to the Bank. Subsequently, and on the morning of his departure for Illinois, the change in the beneficiary certificate was made. H. R. Seward died while on the road to his old home.

There is no direct evidence that any one urged the deceased to change the name of the beneficiary. It is contended, however, that the purpose of the change was to enable the Bank to collect its debt; that under the rules of the order of United Workmen the beneficiary must belong to the family of the member or be related to him by blood, and, therefore, the Bank could not be named as beneficiary; that George W. Seward was induced by the Bank to act for it, and to obtain the change in the certificate for the purpose of receiving the money and paying it over to the Bank. All of the direct testimony bearing on these claims is opposed to the theory of the plaintiff. There are some circumstances, however, tending to support it, though they appear quite inconclusive. The testimony showed that, at the time the change in the certificate was directed, Henry R. Seward was conscious that he was afflicted with a disease likely to prove

fatal; that he was suffering greatly, and was in a condition of nervous affection and great discomfort; but the testimony as to mental incapacity to transact business is not strong or satisfactory. It is not our purpose, however, to pass on the disputed facts in the case, but to call attention to the facts presented for the consideration of the jury, for the purpose of showing the applicability and correctness of the instructions given, among which were the following:

"9. Fraud is never presumed, but must be proved before the jury can find there was any fraud. Fraud can rarely be directly proved, but if such facts and circumstances are shown to the jury as lead them to believe that the defendants intended to perpetrate a fraud upon the deceased, you will be justified then in finding from such facts and circumstances that fraud was committed."

"21. Actual fraud is not essentially necessary in order to set aside the attempted revocation of Henry R. Seward. The acts and contracts of persons of weak and enfeebled understanding — if you find such was the condition of deceased at the time — and who are therefore liable to imposition, will be held void if the nature of the acts or contract justify the conclusion that the party has not, in what he did, exercised a reasonably deliberate judgment, but that he has been imposed upon, circumvented, or overcome by cunning, artifice or undue influence, and induced, by reason of such artifice, cunning or undue influence, to dispose of his property."

"22. If you find that the deceased, Henry R. Seward, placed confidence in and dependence upon the advice of his brother or sister, or any trusted friend, in his extreme infirmity or sickness, contracts or changes of benefit under contracts made at such time or under such circumstances, are subject to strict scrutiny. In such a case it is not necessary to prove the exercise of undue influence or deception, provided you believe that his contract or act was procured by the exercise of the influence and will of one of those acting in such trusted relation, and that, but for the

enfeebled condition of the mind and body of the deceased, and that but for the influence of those surrounding him he would not have revoked the beneficiary certificate, then such revocation would be void."

All these instructions are inaccurate and erroneous as abstract statements of the law. They are especially so as applied to the case on trial.

The first proposition contained in the ninth instruction is sound; but it is not the law that proof of an intent to perpetrate a fraud will justify a finding that fraud was committed. It is exceedingly difficult to say that there was any evidence tending to show fraud. George W. Seward voluntarily assumed an obligation equal to the amount of the certificate for his brother's debt to the Bank. By this means the money necessary to enable him to make the journey was obtained from the Bank. There would seem to be nothing reprehensible in an arrangement which would protect George in the event of Henry's death.

2. Proof of intent not proof of fraud.

The twenty-first instruction is erroneous as applied to the case in hand in stating that the acts of a person of weak and enfeebled understanding will be held void if the nature of the acts or contract justify the conclusion that the party did not exercise a reasonably deliberate judgment, but has been imposed on. This probably gave the jury to understand that they might determine the question of fraud from the nature of the transaction alone, and that no proof of actual fraud or of influence exerted was necessary; that if they thought the act itself was such as ought not to have been done under the circumstances, and if they found that Henry R. Seward was of weak and enfeebled understanding, they might treat it as void. Possibly, in some cases such an instruction might not be objectionable. In this case, however, there was nothing in

the act itself which was necessarily wrong, or which necessarily implied anything more than a disposition on the part of the deceased to protect his brother from loss incurred on his account.

The twenty-second instruction is also erroneous in stating that if Henry R. Seward placed confidence in and dependence on the advice of his brother, sister, or any trusted friend, in his extreme infirmity or sickness, it was not necessary to prove deception or the exercise of undue influence, provided the act was procured by the exercise of the influence and will of one of those acting in such trusted relation, and but for the enfeebled condition of his mind and body and the influence of those surrounding him, he would not have revoked the certificate. In order to avoid the revocation of the certificate it was necessary to prove either fraud, undue influence, or mental incapacity. Nearly, if not quite every one, has trusted friends on whom he places more or less reliance in times of trouble and affliction. To say that the act of a person rendered weak and infirm by illness is necessarily void when procured by the influence of trusted friends, is equivalent to declaring as a matter of law that one's friends will be presumed to deceive and mislead him in times of greatest weakness and distress. It is, of course, proper to strictly scrutinize every transaction through which any one occupying a confidential relation obtains an advantage under such circumstances. The conduct of George W. Seward might well be strictly scrutinized. Possibly, also, if the jury were of the opinion that the Bank would be benefited by the transaction, the acts of the cashier should be viewed in the same light. There is nothing, however, to indicate any sinister motive actuating his sister. But even as to George W. Seward and

the cashier it was still necessary to prove either utter incapacity on the part of Henry to transact business, or fraud or undue influence on their part. Mere solicitation to do that which was entirely right and proper, though it would not have been done without such solicitation, is not wrongful, and should not be treated as equivalent to wrongdoing.

The errors contained in these instructions require a reversal of the case. While complaint is made of other rulings of the court, it seems unnecessary to discuss any other questions in the opinion.

The judgment is reversed and the cause remanded for a new trial.