No. 26,385.

JOSEPHINE C. LOVELESS, *Appellee,* v. GRACE OTT, *Appellant.*

SYLLABUS BY THE COURT.

1. MUTUAL BENEFIT INSURANCE—*Action for Benefits—Issues Triable to Jury— Pleadings—Evidence—Going Forward With Proof.* In an action on a beneficiary certificate the insurer was named as sole defendant, and by affidavit in accordance with R. S. 60-418, admitted liability for the sum claimed, but averred a third person also claimed the sum under a later beneficiary certificate. The insurer asked to pay the money into court and to be relieved from further liability, and that the third person be made a defendant. This was done. In the controversy between the two claimants for the fund, it is held: (1) The issues were properly triable to a jury, following *Seward v. Seward,* 59 Kan. 387, 54 Pac. 1131. (2) It was not error for the court to overrule defendant's motion for judgment upon the pleadings. (3) Neither was it error for the court to overrule defendant's demurrer to plaintiff's evidence. (4) In such a case, when one party has made a *prima facie* showing of right to the fund, it is proper to require the other party to go forward with the proof. (5) A ruling in the progress of a trial, requiring a party to go forward with the proof, which results in an orderly presentation of the case and deprives

Appeal and Error, 4 C. J. pp. 691 n. 86, 712 n. 62. Evidence, 22 C. J. pp. 76 n. 4, 78 n. 18. Juries, 35 C. J. p. 163 n. 73. Pleading, 31 Cyc. p. 523 n. 49. Witnesses, 40 Cyc. p. 2223 n. 95; 26 A. L. R. 1491; 8 A. L. R. 1097; 28 R. C. L. 451, 492.

Loveless v. Ott.

neither party of the opportunity of presenting fairly and fully all the evidence he has upon any issue under the pleadings, is not erroneous.

2. WITNESSES—*Competency—Interested Party—Testimony as to Mental Capacity of Deceased Person.* A witness, even if incompetent under R. S. 60-2804, may testify as to the mental capacity of one since deceased based upon observations by the witness of the appearance, demeanor and conduct of such person. Such observations do not amount to "transactions or communications" as these terms are used in the statute.

3. MUTUAL BENEFIT INSURANCE—*Trial Generally.* Other alleged errors are considered and held to be without substantial merit.

Appeal from Wyandotte district court, division No. 1; EDWARD L. FISCHER, judge. Opinion filed November 6, 1926. Affirmed.

*N. J. Wollard, Blake A. Williamson* and *Thomas A. Pollock,* all of Kansas City, for the appellant.

*H. E. Dean* and *E. E. Martin,* both of Kansas City, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This action involves a contest between two claimants for the proceeds of a beneficiary certificate issued by the Modern Woodmen of America to Wesley W. Loveless. The plaintiff is the widow of the insured; the defendant is his daughter by his first wife. The action was tried to a jury, which answered special questions and returned a general verdict for plaintiff. The defendant has appealed.

Mr. Loveless resided for many years in Kansas City, Kan. His business was that of a barber. He owned a shop, which he operated, and at times owned one or two other shops. In April, 1896, he became a member of the Modern Woodmen of America, and a beneficiary certificate in the sum of $2,000 was issued to him in which Bertie Loveless, then his wife, was named beneficiary. After her death, and in 1905, this beneficiary certificate was surrendered and at his request a new one was issued in which his daughter, Grace Loveless, and his son, Teddy Loveless, were named beneficiaries. It seems that this certificate was lost and another issued naming the same beneficiaries in December, 1906. In January, 1917, the son having died, another change was made and a new certificate was issued in which his daughter, Grace Loveless, and his granddaughter, Evelyn Loveless, were the beneficiaries named. In November, 1918, Mr. Loveless married the present plaintiff, and in 1922 he surrendered the beneficiary certificate last mentioned and caused a new one to be issued in which the present plaintiff, Josephine C. Loveless,

then his wife, was named beneficiary, and the certificate was left in her keeping. In January, 1924, a sixth beneficiary certificate was issued to him in which his daughter, Grace Ott, the present defendant, was named beneficiary. Mr. Loveless died January 29, 1924.

In February, 1924, this action was brought. It was based upon the beneficiary certificate in which plaintiff was named beneficiary, and the Modern Woodmen of America was the sole defendant. The defendant, proceeding under R. S. 60-418, filed an affidavit before answer in which it recited the several beneficiary certificates to Wesley W. Loveless, admitted he was a member in good standing at the time of his death, that proofs of death had been made, and its liability in the sum of $2,000, but averred that Grace Ott claimed the money under the sixth beneficiary certificate, and, because of the conflicting claims of plaintiff and Grace Ott, asked to be permitted to pay the money into court and be relieved of further liability, and that Grace Ott be made a party defendant. In accordance with a stipulation signed by all the parties the court made an order substituting Grace Ott as defendant, in the place of the Modern Woodmen of America, and that she answer plaintiff's petition, and directing the insurer to pay the money into court to abide the result of the action, and upon so doing to be relieved of further liability. The money was so paid. Grace Ott answered; the plaintiff replied; there were repeated amendments to pleadings by both parties. These need not be detailed. As finally framed the pleadings may be summarized thus: Plaintiff claimed the sum paid into court by the insurer under the fifth beneficiary certificate issued to W. W. Loveless in 1922, in which she was named beneficiary. Defendant claimed the same sum under the sixth beneficiary certificate issued in January, 1924, in which she was named beneficiary. She further alleged that at the time, or after the sixth beneficiary certificate was issued, she had a talk with her father in which she agreed to care for her father and furnish him a home during his illness and in the event of his death pay out of the proceeds of the beneficiary certificate the expenses of his sickness and burial, so far as his estate was insufficient to pay the same, and that she should have the balance, and that in accordance with such agreement she had obligated herself to pay certain medical and funeral expenses. Plaintiff contended the sixth beneficiary certificate was void and of no effect for three reasons: (1) That she had a vested interest as beneficiary in the fifth

beneficiary certificate by reason of a certain agreement between her and the insured at the time that certificate was issued. Because of the by-laws of the insurer, the provisions of the beneficiary certificate, and the statute (R. S. 40-701) prohibiting a beneficiary from having or obtaining a vested interest in such certificate before the death of the insured, this question and the evidence offered pertaining thereto, were taken from the jury (except for special findings), and the jury was instructed not to consider the evidence on this question in reaching the general verdict. (2) Plaintiff denied, under oath, that Mr. Loveless had signed the request for the issuance of the sixth beneficiary certificate, and the affidavit of the loss of the fifth beneficiary certificate, but alleged, in the alternative, that if he did sign such papers, he did so by reason of fraud and undue influence of defendant, Grace Ott, and her husband. Upon this point the trial court held there was no evidence to go to the jury and did not submit it to them. Since there is no cross appeal here, we need give this question no further attention. (3) That at the time Mr. Loveless signed the request to issue the sixth beneficiary certificate and the affidavit of the loss of the fifth beneficiary certificate (if he did sign them) he lacked mental capacity to do so, being so weakened by disease, both mentally and physically, that he was not able to realize the effect of acts committed by him. Upon this point there was much evidence, and the question was submitted to the jury. The jury found, in answer to special questions, that at the time he signed such instruments he did not know and comprehend the contents of the instruments nor the consequences of his acts, and rendered a general verdict for plaintiff. These findings and verdict were approved by the trial court and judgment rendered accordingly.

Among other things, the evidence showed, in substance, the following: The plaintiff was the widow of Doctor Shiveley, who had died in 1912. At the time of her marriage to Mr. Loveless she resided in the old Shiveley homestead, a large frame residence which had been built several years. She maintained herself, in part at least, by taking in roomers, though she had other income, the extent of which is not disclosed. Upon their marriage they took an apartment near his barber shop, where they lived for a year or so, and thereafter moved to her residence. She was a year or two older than Mr. Loveless, who was 73 at the time of his death. Aside from

being nearsighted her health was good, considering her age. The relations between her and her husband were congenial. Early in December, 1923, Mr. Loveless was injured in an automobile collision, but the extent of his injuries was not shown, and perhaps it was of no serious consequence. Soon thereafter he had an attack of the "flu," which confined him to his home most of the time for two or three weeks. He took treatments from Doctor Miller, a chiropractor, from whom the husband of defendant was taking instructions to become a chiropractic doctor. About December 20 it seems that Doctor Miller advised that he go to the home of defendant, in another part of the city, to be cared for. Defendant and her husband went to his home to get him. He objected to going and wanted to stay at home, but they got his hat and coat and took him with them. Plaintiff did not seriously object to this, but rather left it to Mr. Loveless. Plaintiff went to see him several times, on which occasions she would have to hire a car or get someone to take her, for she did not feel safe in going among the traffic to the street car. Plaintiff contends that defendant and her husband on the different occasions she was there showed indications that they did not want her present.

After he had been at defendant's home perhaps two weeks, defendant called the residence of the local Modern Woodman camp clerk and said that Mr. Loveless wanted the papers sent to her house for him for change of beneficiary in his certificate, and to show the loss of the former certificate. The clerk mailed the papers. They lay about the house for ten days or two weeks. The rules of the insurer require that they be signed before a notary public or before the clerk of the local camp. The clerk of the camp was asked to go to defendant's home and witness the signing of these papers, and he did so on January 12. At that time he, or someone other than Mr. Loveless, filled out the blanks in the papers, and Mr. Loveless signed them in the presence of the camp clerk. On that occasion there was no discussion about making the change. The plaintiff's name was not mentioned. The camp clerk sent these papers in to the head office by special delivery, a new beneficiary certificate was issued, effective when the conditions thereon named were accepted in writing by the insured. This certificate was mailed to the camp clerk, who advised defendant, or her husband, it was there, and defendant's husband immediately went and got it from the camp clerk and

took it home. His signature thereon, agreeing to the conditions thereof, bears the date of January 19. Plaintiff was not consulted nor informed of these proceedings.

A few days before Mr. Loveless' death, plaintiff went to the camp clerk to pay the dues for that month and was informed they had been paid. She asked if there had been a change in the beneficiary. The clerk told her there had been a change, but that he was not privileged to discuss that matter with her. The evidence discloses that there was a rapid failure in health of Mr. Loveless after he was taken to the defendant's home. This is shown by the testimony of Doctor Miller and that of another physician who was called early in January, and who treated the patient until his death, calling each day and sometimes twice a day for that purpose. On January 12 he was very feeble and in bed. On the 13th he had a severe attack, from which for a time it was thought he would not revive. He was delirious for 12 to 24 hours before his death. These physicians gave testimony as to his physical ailments. Defendant called a number of witnesses, who saw him at various times he was at her home. Most of these testified to his mental alertness. Plaintiff called two physicians as expert witnesses, who, in answer to hypothetical questions based upon the physical condition of the patient as disclosed by the evidence pertaining thereto, gave it as their judgment that the patient's mind was so impaired by disease that on January 12 or 19 he could not have had mental capacity to know or realize the consequences of his act or those dependent upon him, or to transact business matters. No attack is made upon the ability nor the professional integrity of these witnesses. There was evidence of the plaintiff of his conduct even before he went to the home of defendant tending to show loss of mental capacity, and perhaps the testimony of some of the other witnesses tending to show mental as well as physical weakness.

Turning now to the legal questions raised by the appeal. It is contended that under the pleadings this is an equity case and should not have been submitted to a jury, but should have been tried to the court. It was not improper to try the case to a jury. (*Seward v. Seward,* 59 Kan. 387, 54 Pac. 1131.)

Defendant moved for judgment on the pleadings, and objected to the introduction of any evidence, on the ground that plaintiff's petition did not state facts sufficient to constitute a cause of action, and appellant complains of adverse ruling thereon. The point is

made that the petition did not allege that Mr. Loveless was in good standing at the time of his death, and that proofs of death had been made, and that the action was prematurely brought, since under its by-laws the insurer had 120 days after proofs of death in which to pay the claim. None of these questions was in issue at the time these rulings were made, all of them having been admitted or waived by the insurer. There was no error in these rulings.

Appellant complains that her demurrer to plaintiff's evidence was overruled, and complains of remarks of the court made at that time concerning the burden of proof. At the close of the argument on the demurrer, the comments of the court, as disclosed by the abstract, are as follows:

"I think this case has been tried backwards up to this point. I think the plaintiff stated a cause of action in her original petition, against the Modern Woodmen of America, defendant originally; when taken in connection with the answer of the defendant Woodmen, it makes a case. That is all the plaintiff had to do here to make a case *prima facie*. This puts the burden on the defendant, that is, the intervening defendant, to prove her case, whatever she has, before she has any standing here. This demurrer is not well taken. In fact, I think the burden is on the defendant here all the way through in this case—it has been tried backwards. Do you get the point? This reply that was spoken of here was really an answer to the intervening petition; and that is the situation as far as the pleadings are concerned. At any rate, there is sufficient question so that this demurrer should not be sustained, and the case should be submitted to the jury for findings of fact, so that when we get through here, we will have the facts settled, and if the case goes any farther, it can finally be determined by an appellate court if it is not determined here. I think this case ought to be adjusted. We have got to start out with this proposition: that primarily this widow should have this money, unless someone else has some equitable claim to it, which appears to be the case here. But this case really ought to be adjusted by these parties. They ought to get together on an equitable distribution of this fund. Now, that is a suggestion of the court. You folks can think about it between now and 2 o'clock. If you don't get together, of course, we will proceed with the trial."

It was not error for the court to overrule the demurrer to the evidence. What the court there said to counsel about the burden of proof—it is clear from the record as a whole—was in consideration of the question of who should then go forward with the proof, for in his instructions the court clearly placed the burden of proof upon plaintiff. Here each party at the trial was relying upon a beneficiary certificate issued by the insurer; each party's claim was primarily against the insurer; the insurer had admitted liability and

was no longer in the contest; the contest was over the fund, by two independent claimants. In this situation the terms "plaintiff" and "defendant" did not mean much, for either might have been plaintiff and the other the defendant. When one had made a *prima facie* case it was not error to require the other to go forward with her proof, and that is all the ruling of the court then made on the burden of proof amounted to. The ruling of the court resulted in an orderly presentation of the case as a whole. Neither party was deprived of a fair opportunity to present all her evidence upon every question presented by the pleadings; indeed, that is not even contended. The beneficiary certificate under which plaintiff claimed the fund was properly issued; this was not controverted. The plaintiff, therefore, was entitled to the fund, unless the certificate under which defendant claimed was duly issued. Passing the respective claims of the parties as to contracts between them and the insured, this depended, first, upon whether Mr. Loveless signed the request for changed certificate and the affidavit of the loss of the certificate previously issued, January 12, and the certificate itself, on January 19—facts asserted by defendant and denied under oath by plaintiff. This placed the burden of establishing those facts upon defendant and required her to go forward with the proof, which, as presented, included all the circumstances pertaining thereto; second, and if those instruments were signed by Mr. Loveless, (*a*) Was he induced to do so by the fraud and undue influence of defendant? and (*b*) Did Mr. Loveless have mental capacity to comprehend what he was doing and the consequences of his acts? Upon these questions the burden was upon plaintiff, but after defendant offered proof of the signing of the instruments by Mr. Loveless, and the circumstances relating thereto, perhaps it was not practical to segregate such evidence from that pertaining to undue influence and mental capacity and stop at a place from which plaintiff would then be required to go forward with the proof; indeed, there was then no request that such be done. The suggestion of the court that the parties get together on an equitable distribution of the fund was made to counsel, not to the jury, and is not complained of.

Touching the question of mental capacity of Mr. Loveless on January 12 and January 19 to make the change in his beneficiary certificate, the plaintiff testified to his conduct, acts and appearance on several occasions shortly before he was taken to the home of de-

fendant and during the time he was there. It is contended she was incompetent by reason of R. S. 60-2804. The testimony did not relate to transactions or communications with the deceased. (*Grimshaw v. Kent,* 67 Kan. 463, 73 Pac. 92; *Harper v. Harper,* 83 Kan. 761, 113 Pac. 300; *Brown v. Brown,* 96 Kan. 510, 152 Pac. 646; and see annotations on this question, 8 A. L. R. 1097.)

Complaint is made of the testimony of the expert witnesses and of the questions propounded to them. It is not necessary to go into a detailed analysis of this. We have considered all of the arguments of appellant in relation thereto and find nothing seriously erroneous in this respect.

Complaint is made of the refusal of the court to give instructions requested, and also of the instructions given. The instructions given recognize the right of the insured to change the beneficiary, placed the burden upon plaintiff to show the mental incapacity of the insured at the time he executed the instruments upon which the sixth beneficiary certificate was issued, and, taken as a whole, are fully as favorable to defendant as the record warranted. There was no error in this respect.

The court submitted to the jury special questions pertaining to the alleged agreement between the plaintiff and defendant of which she claims to have acquired a vested interest as beneficiary, although, as previously stated, the court took that question away from the jury and instructed them not to consider it in reaching the general verdict. Defendant now complains that the court submitted to the jury special questions upon an issue not before it. Ordinarily special questions should not be submitted to a jury which are not material to a decision of the case. (R. S. 60-2918; *Kansas Pac. Ry. Co. v. Reynolds,* 8 Kan. 623; *City of Wyandotte v. White,* 13 Kan. 191.) In this case defendant repeatedly through the trial had urged that this was a suit in equity, that it should be tried to the court, that he should make findings, and the court had announced that he would submit to the jury special questions upon various phases of the case, their application to be determined at the time of final judgment. With this in mind we are unable to see in what particular defendant was prejudiced by the submitting of these questions. The only questions submitted to the jury on which they were asked to find a general verdict pertained to the mental capacity of Mr. Loveless to execute the papers upon which the beneficiary certificate under which defendant claimed was issued. Special questions were

submitted also upon that issue, and it was determined favorably to plaintiff, both by the general verdict and by the answers to special questions pertaining thereto.

Finally it was argued that a new trial should have been granted because of misconduct of counsel for plaintiff in his closing argument to the jury, but this contention has no substantial merit.

The judgment of the court below is affirmed.