KNAPP v. OTTINGER et al.

No. 34111.   Nov. 27, 1951.

Rehearing Denied Feb. 19, 1952.

Application for Leave to File Second Petition for Rehearing Denied March 4, 1952.

*240 P. 2d 1083.*

Halley, Douglass & Felix, Oklahoma City, and Spillers & Spillers, Tulsa, for plaintiff in error.

Richardson, Shartel & Cochran and R. C. Jopling, Jr., Oklahoma City, for defendant in error First National Bank & Trust Company.

Rittenhouse, Webster, Hanson & Rittenhouse, Oklahoma City, for defendant in error Ottinger Brothers.

BINGAMAN, J. This action was brought by the plaintiff, Margery Knapp, administratrix of the estate of Lloyd Knapp, deceased, against L. M. Gage and the First National Bank & Trust Company of Oklahoma City, to recover the sum of $25,000, theretofore placed in an escrow account carried in said bank pursuant to a contract theretofore entered into between L. M., or Lois M. Gage, and Ottinger Brothers. The bank, by way of answer, set up that Ottinger Brothers also claimed the money and that it was simply an escrow holder without further interest therein, and at its request Ottinger Brothers were made parties defendant and asserted their claim to the fund. L. M. Gage made default and thereafter assigned her interest in the fund to a third party who disclaimed any interest therein. The trial court rendered judgment in favor of Ottinger Brothers, holding that the said sum accrued to them as liquidated damages for the breach of the contract by L. M. Gage, directed the bank to pay the money over to them, and released it from further liability. Plaintiff appeals.

The essential facts are undisputed. From the record it appears that on March 25, 1944, a contract was entered into between Clyde L. Ottinger and Eugene C. Ottinger, copartners doing business as Ottinger Brothers, and L. M. Gage, doing business as Gage Equip-

ment Company, of San Francisco, California, whereby Ottinger Brothers agreed to sell and Gage agreed to buy certain used grading and paving equipment owned by Ottinger Brothers, most of which was then in use by them. The contract listed the equipment and provided that the purchase price of $200,000 should be paid, $100,000 within 30 days after March 25, 1944, $50,000 within 60 days from said date, and $50,000 within 120 days from said date. The property was listed in three lots and the seller agreed to deliver to the buyer, within 30 days from the date of the contract, all or any part of the property described in "Exhibit 1", and to deliver within 60 days that described in "Exhibit 2", and within 90 days that described in "Exhibit 3", such delivery being dependent upon payment for the equipment delivered at the price specified in the list. It provided that in all events buyer should pay to seller a minimum of $100,000 within 30 days from date. It further provided that the contract should be deposited with the First National Bank & Trust company, of Oklahoma City, as escrow agent, together with bills of sale, and that all payments should be made to the agent, a bill of sale being delivered by the escrow agent if and when payment for a piece of equipment was deposited in the escrow account by Gage. It also provided for a deposit of $5,000 to be paid to Ottinger Brothers as liquidated damages if Gage should breach the agreement.

Gage being unable to sell enough of the equipment to enable her to pay the sum of $100,000, as provided in the contract, within 30 days from the date thereof, entered into an agreement with Lloyd Knapp whereby, for the sum of $25,000 to be placed in the escrow account by him, he was to receive a one-half interest in the profits derived from the sales of the equipment, and a one-half interest in the profits of any other purchase and sales agreement entered into by Gage in the purchasing and selling of equipment similar to that involved in the Ottinger contract. This money was duly deposited to the credit of Gage in the escrow account in the First National Bank & Trust Company, of Oklahoma City, on or about May 1, 1944. On the same date Gage wired the bank that she was depositing the money as liquidated damages in event she did not pay Ottinger within the extended time. Ottinger Brothers had previously advised Gage and the bank that they would extend the time within which the $100,000 was to be paid for another 30-day period, provided she deposited in the escrow account $25,000, which was to be paid to Ottinger Brothers as liquidated damages if she failed to make the $100,000 payment within the 30-day extension period. She failed to make that payment or to effect a sale of any considerable portion of the equipment within the 30-day extension, and apparently abandoned the enterprise when Ottinger Brothers refused to give her a further extension.

On May 25, 1944, the expiration date of the extension period, Knapp notified the bank that the money was his, and that if the bank made payment of any money in the escrow account to any person other than him he would hold the bank accountable therefor. A short time thereafter he filed suit in the Federal court against the bank, Ottinger Brothers and L. M. Gage, seeking cancellation of the contract between him and Gage, and to have himself adjudged to be the owner of the $25,000 deposited, as against all parties in that case. The trial court sustained motions to dismiss, filed by the bank and Ottinger Brothers, and upon appeal that case was reversed by the Circuit Court of Appeals, the decision of that court appearing in 154 F. 2d 395. That case was dismissed by Knapp, and thereafter this action was filed. Knapp died prior to the trial of the case so that his testimony was not available.

In this court plaintiff in error first contends that the money advanced by Knapp and deposited in the escrow account was and remained Knapp's personal property. While unquestionably it was his money when it was paid into

the escrow account, we think that it thereupon became subject to the terms of the contract between Gage and Ottinger Brothers and to the terms and conditions of the agreement between them to extend the initial 30-day period another 30 days. The Circuit Court of Appeals held that the contract between Knapp and Gage was a partnership agreement, and there is considerable contention between the parties as to whether the contract between Knapp and Gage was one of partnership, or a joint venture. In the view we take of the case it is not material whether the relation between these parties was that of partnership or joint venture, or whether the advancement of the fund by Knapp to Gage simply created the relation of debtor and creditor. That question might be involved in an action between plaintiff and Gage, but Gage was not made a party to the appeal, and no judgment was rendered against her by the trial court.

As between Knapp and Ottinger Brothers, when Knapp permitted the money to be deposited in the escrow account in order to carry out the contract of extension between Gage and Ottinger Brothers, it became subject to the control and disposition of Gage, and subject to any agreement which she might make with Ottinger Brothers in connection with the original contract or extension agreement between them, an agreement to which Knapp was not a party. There is nothing in the record to indicate that the Ottingers at any time prior to the extension of the 30-day period were in any way advised of the relationship between Knapp and Gage, or of the contract between them, and certainly they knew of no fraud practiced by Gage, if in fact any was practiced, in the making of the contract between her and Knapp and the furnishing of the money by Knapp. Considered in the strongest light possible for plaintiff, Gage, in her dealings with Ottinger Brothers, was Knapps' agent, having apparent authority to deposit the money as liquidated damages as required by Ottinger Broth-

ers. In Rosser-Moon Furniture Co. v. Oklahoma State Bank, 192 Okla. 169, 135 P. 2d 336, we said:

" 'Apparent authority' of an agent is such authority as the principal knowingly permits the agent to assume or which he holds the agent out as possessing."

Other cases so holding are Walker Valley Oil & Gas Co. v. Parks & Palmer, 128 Okla. 286, 262 P. 672, and Ginner & Miller Pub. Co. v. N. S. Sherman Machine & Iron Works, 93 Okla. 221, 220 P. 650. There is nothing in the record to indicate that Knapp was not advised of the intention of Gage to deposit this sum as liquidated damages, but, on the contrary, the plaintiff's witness, Barnes, who was employed by Gage in connection with the sale of the equipment, testified that she told him over the telephone shortly before the money was deposited in the bank, that she had or was going to get $25,000 to put up as liquidated damages for the 30-day extension, thus indicating that such use of the sum had been agreed upon between her and Knapp. While plaintiff contends that Gage practiced fraud upon Knapp in persuading him to enter into the contract with her and to advance the said sum of $25,000, the evidence in the record is wholly insufficient to show fraud. Neither Gage nor Knapp testified in the case, and therefore the exact extent of their negotiations, and the representations made by Gage to Knapp, are not disclosed.

The most serious, and we think the decisive question presented for determination, is whether the sum of $25,000 so deposited was liquidated damages or a penalty. Plaintiff contends that it was a penalty, Ottinger Brothers that it was a proper case for the application of the rule of liquidated damages.

By 15 O. S. 1941 §213, penalties imposed by contract for any nonperformance thereof are declared void. By section 214, every contract by which the amount of damages to be paid is determined in anticipation thereof, is to that

extent void except as provided by §215. Section 215 reads as follows:

"A stipulation or condition in a contract, providing for the payment of an amount which shall be presumed to be the amount of damage sustained by a breach of such contract, shall be held valid, when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage."

Since, admittedly, the sum of $100,-000 was not paid to Ottinger Brothers by either Gage or Knapp during the original 30-day period or the additional 30 days of the extension, the question arises whether it would be impracticable or extremely difficult to fix the actual damages which would be sustained by Ottinger Brothers upon such breach, and in 15 Am. Jur. p. 686, §252, it is stated that whether the damages are difficult of ascertainment is to be determined by a consideration of the status of the parties at the time the contract is entered into and not at the time it is broken.

In an amendment to its answer Ottinger Brothers attached an itemized statement purporting to show the amount of the property covered by the Gage contract which they thereafter sold, together with the price which they obtained for it and the expenses incident to a sale. Such of the equipment as had not been sold was shown in this statement and a valuation placed upon it by Ottinger Brothers. Clyde Ottinger, one of the partners, testified as to the situation of the market for secondhand appliances of the kind and character covered by the Gage contract, and attempted to testify as to the damages sustained by reason of the breach of such contract. He testified that at the time the contract was entered into with Gage there was a large demand for secondhand equipment of the character covered by the contract, but that the demand deteriorated rapidly due to the fact that many jobs were being finished and that new jobs where such equipment could be used were scarce. He testified further that while the contract with Gage provided that Gage should take the equipment in its then condition, and that any property which Ottinger continued to use during that period was to be kept in a reasonable state of repair, that when Gage failed to perform the contract they were unable to obtain another purchaser of the property in bulk, but were compelled to dispose of it piecemeal to various parties at the best price they could obtain, and then only when it had been in many instances repaired or reconditioned, and its condition guaranteed by them. He testified that on account of this method of disposal, and the expense of reconditioning, making good their guarantees, and the use of the time of their employees in making sales, they sustained a loss of some $92,000, which they would not have sustained had Gage carried out her contract. On cross-examination, however, it developed that his testimony as to repairs and the amount of repair parts used was to some extent an estimate; that the time spent by employees in making sales, and certain expenses, such as telephone calls, telegraph messages and travel expense, were not ascertainable, and for such time and expense he claimed that Ottinger Brothers were entitled to a commission of 15 per cent on the sale price of the articles.

In McAlester v. Williams, 77 Okla. 65, 186 P. 461, we quoted with approval from the Circuit Court of Appeals in Pressed Steel Car Co. v. Eastern Ry. Co., of Minnesota, 121 Fed. 609, as follows:

" 'When it is certain that some damages will result from delay in the performance of a contract, when those damages are incapable of exact ascertainment, or are based upon matters that are to a considerable degree uncertain, and when the amount stipulated is not, on the face of the agreement, out of all proportion to the probable loss, a contract to pay a sum certain for each day, week, or other definite period of delay beyond the time fixed by the contract for its fulfillment is a valid and enforceable agreement

for the measurement of the damages, and is not a contract for a penalty.' "

We cited this case with approval in Lorraine Petroleum Co. v. Bartlett, 138 Okla. 8, 280 P. 286.

Careful examination of the evidence in the instant case convinces us that the damages which would be sustained by Ottinger Brothers in the event Gage defaulted in her contract with them were so difficult of ascertainment as to bring the case within the rule above announced. From this evidence it appears that there was no fixed value for this secondhand equipment, the amount to be received therefrom being what a purchaser would pay, depending upon his need therefor and the condition the equipment was in and upon the ability of the seller to find purchasers ready, willing, and able to buy. While the witness, Barnes, for plaintiff, testified that the fact that Ottinger Brothers were using a large portion of the equipment in a levee construction project near Tulsa, during the first part of the 30-day period, made it difficult for them to show the equipment and effect sales, the fact remains that only a very small portion of the equipment was sold by Gage, and that on one lot, which she purchased from Ottinger Brothers and thereafter rented to other parties, she defaulted in payment of the purchase price. Under such conditions, at the expiration of the 30-day period, it appears that the damages to be sustained by Ottinger Brothers, if she failed to comply with the contract, were almost impossible of ascertainment, but from the evidence it appears that they sustained actual damages at least equal to and possibly in excess of $25,000. In view of this evidence, the trial court did not err in holding that the sum advanced by Knapp was not a penalty, but passed to Ottinger as liquidated damages.

Plaintiff asserts that the evidence fails to show any damages sustained by Ottinger Brothers by reason of the breach of the contract by Gage, but we are unable to agree with this contention. While, as stated above, some of the damage was estimated, and the value placed upon the unsold equipment by the witness, Ottinger, was, as he testified, what he would like to obtain for it if he could find a purchaser, we think there was sufficient evidence of actual damage equal to or in excess of $25,000, as above stated.

Affirmed.

CORN, GIBSON, DAVISON, JOHNSON, and O'NEAL, JJ., concur.