H. WAGGONER, Mrs. Christine Waggoner, Robert B. Waggoner and Jessie M. Waggoner, Plaintiff in Error,

·v.

Katherine F. JOHNSTON, J. M. Smith, and The First National Bank & Trust Company of Oklahoma City, Oklahoma, Defendants in Error.

No. 40656.

Supreme Court of Oklahoma.

Dec. 14, 1965.

Glenn H. Grubb, Monnet, Hayes, Bullis, Grubb & Thompson, Oklahoma City, for plaintiff in error.

John H. Cantrell, Lee B. Thompson, Ralph G. Thompson, Cantrell, Douglass, Thompson & Wilson, Oklahoma City, for defendant in error Katherine F. Johnston.

John Chiaf, Cargill, Cargill, Chiaf, Rudkin & Cargill, Oklahoma City, for defendant in error J. M. Smith.

**764**

HODGES, Justice.

The petition of the plaintiff bank requesting interpleader alleged that defendants, the Waggoners, had entered into a contract to purchase certain real property from defendant, Mrs. Johnston, and that pursuant to that agreement, the Waggoners had deposited $15,000.00 earnest money with the plaintiff bank. The petition alleged further that the plaintiff bank claimed no interest in the deposit, but that the deposit was claimed by each of the named defendants and that the plaintiff bank was in doubt as to which claimant was rightfully entitled to the money. The trial court then ordered that the plaintiff bank place the disputed sum of $15,000.00 into the custody of the court, for an adjudication of the entitlement of the defendants thereto.

The defendants, the Waggoners, alleged that their contract with Mrs. Johnston should be cancelled and that the earnest money deposit should be returned to them because their consent to purchase the property had been procured by fraud and misrepresentation on the part of agents representing Mrs. Johnston, the seller. The defendant, Mrs. Johnston, claimed entitlement to the deposit based on a clause in the contract of sale with the purchasers, the Waggoners, liquidating the damages at $15,000.00 in the event of a breach by the purchasers, which breach allegedly occurred when the Waggoners repudiated the contract. The defendant, Mr. Smith, alleged that, as the real estate broker in the transaction, he was entitled to his commission in the amount of $7,800.00.

The Waggoners have appealed from the judgment of the trial court in favor of Mrs. Johnston for the $15,000.00, with interest, which amount was subjected to payment of the claim of Mr. Smith, as broker, for whom judgment was also rendered in the amount of $7,800.00.

The facts indicate that the Waggoners, who were interested in buying some property, contacted Mr. Smith, a licensed real estate broker, who showed them various tracts of land including the property belonging to Mrs. Johnston, known as Faircroft Farm. As the Waggoners indicated an interest in Faircroft Farm, Mr. Smith contacted Mrs. Johnston to determine if the property was still available for sale. Mr. Smith had listed this property at an earlier date for Mrs. Johnston, but had no listing on the property at the time. Mrs. Johnston indicated that she would sell the property. After some negotiation, in which Mr. Smith acted as intermediary, the parties agreed upon a selling price of $130,000.00. The contract was drafted in the form of an offer signed by the Waggoners and accepted by Mrs. Johnston on April 2, 1962. The Waggoners then deposited $15,000.00 earnest money in accordance with the terms of the contract of sale with the escrow agent, the plaintiff bank. Later, by letter, dated June 23, 1962, the Waggoners notified Mrs. Johnston of their intention to rescind the contract because of misrepresentations concerning the use which could be made of the property by Mr. Smith, who was alleged in the letter to be the agent of Mrs. Johnston. The reply letter from Mrs. Johnston dated June 26, 1962, denied any representations were made concerning the property's use and demanded compliance with terms of the contract by July 2, 1962. Subsequently, on July 3, 1962, Mrs. Johnston made demand upon the plaintiff bank for the $15,000.00 deposit as liquidated damages under the contract; and on July 5, 1962, the Waggoners indicated to plaintiff bank that the deposit should properly be returned to them because of the misrepresentations that had induced them to enter into the contract.

The forfeiture provision of the contract states:

"In the event you have complied with all your obligations under this contract and we default in any of the provisions of it between now and the date of closing, the $15,000.00 herein deposited shall be yours to keep as liquidated damages, it being difficult to deter-

mine the exact amount of the damages which will accrue. However, you are to pay our broker, Mr. J. M. Smith, the sum of $7,800.00 as his commission in handling the sale of this property for you."

Faircroft Farm consists of approximately 171 acres of land and is located immediately north of U.S. Highway 66, north of and adjacent to Lake Overholser. It is not in dispute that Lake Overholser is a part of the water supply of the City of Oklahoma City, and as such the area is subject to the ordinances of that City enacted for the sanitary protection of its water supply. Under these ordinances, it would not be possible to use the property in question for a housing project. Conflicting evidence was presented by the claimants concerning the alleged false and fraudulent misrepresentations purportedly made by Mr. Smith, the broker, and by Mrs. Johnston's attorney.

The Waggoners allege on appeal that the trial court committed error in denying their request for a jury trial; in finding that there was no misrepresentation or fraud on the part of Mrs. Johnston; and in failing to find the forfeiture provision of the contract was void as imposing a penalty.

■ This case is a proper one for disposition by an action in interpleader. While there is no specific statutory authority in this state for commencing an action in interpleader, it is within the inherent power of the court to allow such an action. Wells v. United States Fidelity & Guaranty Co., 182 Okl. 290, 77 P.2d 716; Bank of Earlsboro v. J. E. Crosbie, Inc., 182 Okl. 327, 77 P.2d 547 (Involving a bill in the nature of interpleader); Board of Education of City of Atchison v. Scoville, 13 Kan. 17. The stakeholder, the plaintiff bank, claims no interest in the property and has incurred no independent liability to any of the claimants. The claim of each of the remaining parties arises from the same transaction, and is asserted against the same fund. Interpleader is viewed with favor by this court as a means of avoiding multiple and vexatious litigation. It is an appropriate proceeding whenever (1) two or more claims arise out of the same or related subject matter and (2) the stakeholder is exposed to double or multiple litigation as a result of these claims. Applying this test, interpleader is appropriate in the instant case.

■ It is the position of the Waggoners, the plaintiffs in error, that interpleader involves two successive phases of litigation. The first phase concerns whether interpleader is a proper remedy, and the second phase involves the controversy between the claimants. It is as to the controversy between the claimants in this case that the Waggoners assert entitlement to a jury trial. They do not deny that the first phase of the litigation in interpleader is equitable in nature; but they contend that the character of the second phase of the litigation should be determined by the legal or equitable nature of the dispute between the interplead claimants. What is the nature of the second phase of the litigation in this case? This court has ruled, in accordance with the majority view, that where a party rescinds a contract prior to coming into court on the ground that the contract was induced by fraud, as the Waggoners did in this case, and sues to recover an earnest money deposit, the essence of the suit is for money had and received, a common law action. Jones v. Goldberger, Okl., 323 P.2d 344; Also see Annotation in Vol. 95 A.L.R., beginning at page 1000. The claim of Mrs. Johnston for liquidated damages based upon an alleged breach of contract and of Mr. Smith for his brokerage commission also rest in the common law. See Oklahoma City Undertaking Co. v. Greer, 117 Okl. 124, 246 P. 410; Mathews v. Sniggs, 75 Okl. 108, 182 P. 703. Therefore if this were an action strictly among the claimants to the deposit, questions of fact would have to be resolved by a jury, unless waived. Okla.Const. Art. 2 § 19. The issue is thus squarely presented to this court: Are the

claimants to a fund, whose claims are based solely on common law actions, entitled, as a matter of right, to a jury trial in an interpleader proceeding? While this matter has not been free from some doubt in the past, we are in agreement with the vast weight of authority in other jurisdictions to the effect that interpleader, from beginning to end, is an equitable action in which none of the parties are entitled to a jury trial as a matter of right. McDonald v. McDonald, 212 Ala. 137, 102 So. 38, 36 A.L.R. 761; Dennis v. Equitable Life Assur. Soc., 191 Ark. 825, 88 S.W.2d 76; Union Mut. Life Ins. Co. v. Broderick, 196 Cal. 497, 238 P. 1034; St. Nicholas Church v. Kropp, 135 Minn. 115, 160 N.W. 500, L.R.A.1917D, 741; Missoula Trust & Sav. Bank v. Murphy, 50 Mont. 355, 146 P. 941; In re Pollak's Estate, 183 Misc. 910, 55 N.Y.S.2d 614; Symmes v. Graham, 167 S.C. 290, 166 S.E. 269; Bynum v. Prudential Life Ins. Co. of Am., 7 F.R.D. 585 (E.D.S.C.); But see Sherman Nat'l Bank of New York v. Shubert Theatrical Co., 238 F. 225 (S.D.N.Y.), aff'd, 247 F. 256 (2d Cir.). The case of Liberty Oil Co. v. Condon National Bank, 260 U.S. 235, 43 S.Ct. 118, 67 L.Ed. 232, involved an action in interpleader by a stakeholder bank, factually similar to our controversy. The claimants there were parties to a contract of sale of oil land. The seller claimed the earnest money deposit as liquidated damages under the contract of sale, and the purchasers contended the deposit should be returned to them because the title to the property was defective. A jury trial was waived, but the Supreme Court resolved the question of the right to a jury trial in making its determination of the proper scope of the appellate review of the judgment of the trial court. In reaching the conclusion that the entire proceeding in interpleader is equitable in nature, the Court, per Chief Justice Taft, stated, at page 244, 43 S.Ct. at page 121:

"* * * The chancellor having sustained a bill of interpleader, disposed of the controversy between the claimants by directing any method of trial which would best and expeditiously accomplish justice in the particular case. * * *. This well established rule takes the issue here to be tried out of that class of issues in which there must have been a jury trial under the Seventh Amendment. Where it was one which the chancellor could readily dispose of in one proceeding, it was in the interest of economy of expedition, and of justice that he should do so."

■ The opinion of the court in Liberty Nat. Life Ins. Co., v. Brown, 119 F.Supp. 920 (M.D.Ala.), in which the exact contention espoused by the Waggoners in this case was advanced, provides a thorough analysis of the right to a jury trial in interpleader actions. The court follows the precedent of Liberty Oil Co. v. Condon National Bank, supra, in reaching the conclusion that the method of resolving questions of fact is best left to the discretion of the trial judge. While there have been no Oklahoma decisions involving the right to a jury trial in an interpleader action, our previous decisions, in which we have separately considered the nature of interpleader and the right to a jury trial, support the conclusion that no such right exists. We have recognized interpleader as an equitable action to be conducted in a court of equity. Western Surety Company v. Childers et al., Okl., 372 P.2d 214 (Syllabus); Bank of Earlsboro v. J. E. Crosbie, Inc., 182 Okl. 327, 77 P.2d 547; See also Burchfield v. Bevans, 242 F. 2d 239 (10th Cir.); 4 Pomeroy, Equity Jurisprudence, Sec. 1321. We have also stated on numerous occasions that in an equitable action, trial by jury is not a matter of right. Parker v. State ex rel. Sebring, Bank Commissioner, Okl., 391 P.2d 887; Liles v. Bigpond, 190 Okl. 112, 121 P.2d 596; Tobin v. Gantt, 78 Okl. 73, 189 P. 170.

The cases cited by the brief of the Waggoners are not persuasive on this issue. Turman Oil Co. v. Lathrop, 8 F.Supp. 870 (N.D.Okl.); Westinghouse Elec. Corp. v. United Elec. R. & M. Wkrs., 99 F.Supp. 597 (W.D.Penn.); Loveless v. Ott, 121 Kan. 728, 250 P. 324; Seward v. Seward, 59 Kan.

387, 53 P. 63. While the two cited federal cases indicate interpleader involves two successive phases of litigation, the Westinghouse Electric case did not even consider the legal or equitable nature of the litigation, and the Turman Oil case held, contrary to the position of the Waggoners, that a federal court sitting in equity will resolve the entirety of the litigation. The right to a jury trial was not in issue in either case. Neither of the two cited Kansas decisions appear to have considered the equitable effect that interpleader could have on the character of the litigation. The Loveless case, the more recent of the two decisions, did not rule that a jury trial was required but only that "it was not improper to try the case to a jury." 250 P. at 327. In an opinion where the issue of interpleader was expressly considered, the Kansas court ruled the entire controversy to be equitable in character with none of the parties entitled to a jury trial as a matter of right. Robertson v. Ridenour-Baker Grocery Co., 100 Kan. 133, 163 P. 655.

■ The Waggoners contend that they are entitled to a jury trial by the terms of 12 O.S. 1961, § 556 which provides that "issues of fact arising in actions for the recovery of money, or of specific real or personal property, shall be tried by a jury, unless a jury trial is waived." It is well settled law that this statute does not extend the right to a jury trial to cases the gravamen of which are of equitable cognizance, Moschos v. Bayless, 126 Okl. 25, 258 P. 263; Chiles v. De Lana, 187 Okl. 415, 103 P.2d 63, but guarantees this right in actions founded in the common law, Evans v. Bank of F. C. Finerty & Co., 201 Okl. 485, 207 P.2d 272. As seen above, interpleader is an action of equitable cognizance from beginning to end. The precise question of the right to a jury trial under a similar statute in an action in interpleader was considered in State National Bank of St. Louis v. Anderson, Mo. App., 198 S.W. 511. That court held that an action at law is converted to one in equity by interpleader and that the statute provides no requirement for a jury trial in such cases.

■ The trial court correctly decided that a jury trial is not a matter of right in an action in interpleader. Upon examining the facts of this case, we also conclude that the trial court did not abuse its discretion in denying a jury trial.

■ The second main contention of the Waggoners on appeal is that the trial court erred in failing to find that they were induced to enter into the contract of sale as a result of fraud and misrepresentations on the part of agents representing the seller, Mrs. Johnston. This court has stated on many occasions that fraud is never presumed and the burden of establishing it, by clear, satisfactory, and convincing evidence, rests upon the party relying thereon. Knight v. Yoakam, Okl., 338 P.2d 1075. The evidence concerning both agency and the alleged misrepresentations is in conflict. Mr. Robert B. Waggoner testified that he received assurances from Mr. Smith, the broker, that the property could be used for housing and development. Mr. H. Waggoner testified that both Mr. Smith and Mrs. Johnston's attorney told him that they knew of no restrictions against the property. A letter was also introduced by the Waggoners indicating that Mr. Smith may have been aware of the proposed use of the property for housing purposes, prior to the time the contract was signed. Testimony of the Waggoners also indicated that they felt Mr. Smith was employed by Mrs. Johnston, not by them, and that Mrs. Johnston's attorney was authorized to represent her in business matters. In opposition to this evidence, Mr. Smith testified that he was not informed by the Waggoners of the use that they intended to make of the property and made no representations to them in this regard. The attorney for Mrs. Johnston testified that he made no representations concerning the proposed use of the property and that he had received no authorization from Mrs. Johnston to enter into negotiations to sell the property, but only to assist in drawing

up the contract of sale. Mrs. Johnston testified that she at no time employed Mr. Smith to represent her in this sale, nor did she authorize her attorney to negotiate the sale of the property. The contract signed by the Waggoners acknowleging Mr. Smith to be their broker was also introduced on behalf of Mrs. Johnston. It is well settled that this court will not disturb the findings of the trial court on issues of fact, in an action of equitable cognizance, unless they are clearly against the weight of the evidence. Phillips v. Phillips, Okl., 395 P.2d 803; Bowen v. Hamilton, Okl., 393 P.2d 858. We believe the evidence reasonably supports the findings of the trial court that there was no fraud or misrepresentation in behalf of Mrs. Johnston.

The trial court also correctly found that Mr. Smith was entitled to his commission as the broker in this transaction. While the evidence is in conflict on this point, as discussed above, there is sufficient evidence to support the court's finding that Mr. Smith did not make false or fraudulent misrepresentations to the Waggoners to induce them to enter into this contract. Further the evidence conclusively establishes that this sale resulted primarily from the efforts of Mr. Smith. He brought the property to the attention of the Waggoners, he presented their offer to purchase to Mrs. Johnston, and he assisted in the negotiations over the terms of the sale. Where a broker has not been guilty of misconduct and is the moving cause of a sale, he is entitled to his commission even though the parties do not carry out their agreement. Nunn v. Barber, 207 Okl. 393, 249 P.2d 999; Poston v. Buchanan, 203 Okl. 520, 223 P.2d 539; Childs v. Moore, 57 Okl. 638, 157 P. 333; Deming Inv. Co. v. Britton, 72 Okl. 145, 179 P. 468.

The third main ground advanced by the Waggoners for reversal is that the trial court erred in failing to find the forfeiture provision in the contract invalid in that it provided for a penalty in the event of their nonperformance. The pertinent contract provision, set out above, states that in the event of a default on the part of the pur-

chasers, the Waggoners, the $15,000.00 earnest money deposit is to be retained by the seller, Mrs. Johnston, as liquidated damages "it being difficult to determine the exact amount of the damages which will accrue."

There are three statutes bearing directly on the issue of contractual forfeiture provisions. 15 O.S.1961, § 213, proscribes penalties imposed for the nonperformance of contracts. The following section, 15 O.S. 1961, § 214, provides that every contract, by which the amount of damages to be paid, for a breach of an obligation, is determined in anticipation thereof, is to that extent void, except as expressly provided by 15 O.S.1961, § 215. The latter section is as follows: "A stipulation or condition in a contract, providing for the payment of an amount which shall be presumed to be the amount of damage sustained by a breach of such contract, shall be held valid, when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage."

Under these statutes, the burden of establishing that the damages were difficult of ascertainment rests on the party seeking the enforcement of the liquidated damage clause, and the fact that the parties have expressly stated in the contract that the damages are difficult to determine does not shift the burden of proof on this issue. Claude Neon Federal Co. of Chicago, Ill. v. Larkins, 177 Okl. 291, 58 P.2d 882; And, interpreting similar California statutory provisions, see Better Food Markets v. American Dist. Teleg. Co., 40 Cal.2d 179, 253 P.2d 10, 42 A.L.R.2d 580, and Rice v. Schmid, 18 Cal.2d 382, 115 P.2d 498, 138 A. L.R. 589. The trial court at the beginning of the trial proceeding in our case wrongfully placed the burden of proof on the Waggoners to establish that the damages were not difficult to ascertain. This error is harmless in this case in that it is clear from the memorandum of the trial court overruling the Waggoners' motion for a new trial that the ultimate finding of the court on this issue was based on evidence submitted by Mrs. Johnston, and not on the failure of

the Waggoners to uphold the evidentiary burden originally placed on them. This memorandum of the trial court on this issue states that Mrs. Johnston's "evidence did show that she sustained substantial damages. It shows that the damages were uncertain, were incapable of ascertainment and depended upon many contingencies incapable of having been foreseen, at the time of the contract and as of now."

While 15 O.S.1961, § 215, states that a stipulation in a contract "shall be held valid" when it is extremely difficult to determine actual damage, this language must be considered in conjunction with the language of the two preceding sections. When this is done it is clear that the Legislature did not intend to validate provisions that impose a penalty simply because the damage resulting from a breach would be difficult to ascertain. To hold otherwise would mean for example that a forfeiture provision inserted in a contract in terrorem of the offending party and bearing no reasonable relation whatsoever to the actual damage would have to be upheld when, from the nature of the case, it would be extremely difficult to fix the actual damages. Such a result was not intended by the Legislature. We have previously held that the purpose of the Legislature in enacting these statutes was to prevent the obtaining of unfair advantage by contracting in advance for excessive damages. Southern Motor Supply Co. v. Shelburne Motor Co., 172 Okl. 495, 46 P.2d 562. However, language contained in certain previous decisions of this court could be interpreted to support the view that whenever damages were shown to be extremely difficult to determine, the stipulated damage provision "shall be held valid." McAlester v. Williams, 77 Okl. 65, 186 P. 461; Sierzek v. Smith, 86 Okl. 79, 206 P. 611. We do not adopt this interpretation. To sustain a provision on the ground that it provides for liquidated damages, the evidence must be sufficient to show first, that it would be impracticable or extremely difficult to fix the actual damage and second, that the provision does not impose a penalty.

See Lorraine Petroleum Co. v. Bartlett, 138 Okl. 8, 280 P. 286. The fact that damages are difficult to ascertain is indicative in itself that a penalty was not intended, but it is not conclusive. 22 Am.Jur.2d Damages § 218 et seq.

Whether the damages were difficult of ascertainment is to be determined as of the time the contract was entered into and not at the time of the breach. Knapp v. Ottinger, 206 Okl. 113, 240 P.2d 1083. The nature of the property in question made it extremely difficult to establish its value with any degree of certainty. The property was located outside of Oklahoma City adjacent to Lake Overholser. At the time of the contract, it appeared to be suitable for a number of uses, such as for farming, for residential development, or for industrial development. In such circumstances it would be very difficult to determine the value of the property or to find comparable property. In addition, the evidence indicates that the value of the property was rendered even more uncertain in that the sale was subject to an existing farm lease on the property which was assigned to the purchasers. Some weight must also be attached to the conclusion of the parties to the contract, who the evidence indicates were intelligent business people, that the exact amount of damages was difficult to determine. We hold that the finding of the trial court that the damages were difficult to ascertain is well supported by the evidence.

Whether the forfeiture provision imposed a penalty, or provided for liquidated damages, is to be determined from the language and subject matter of the contract, the evident intent of the parties and all the facts and circumstances under which the contract was made. The most important facts to be considered are whether the damages were difficult to ascertain, and whether the stipulated amount is a reasonable estimate of probable damages or is reasonably proportionate to the actual damage sustained at the time of the breach. Lorraine Petroleum Co. v. Bartlett, 138 Okl. 8, 280 P. 286;

Knapp v. Ottinger, 206 Okl. 113, 240 P.2d 1083; See also Corvino v. 910 South Boston Realty Co., Okl., 332 P.2d 15. Furthermore this court favors the interpretation of a forfeiture provision in a contract, where damages are difficult to determine, to be one for liquidated damages and not a penalty. In Southern Motor Supply Co. v. Shelburne Motor Co., 172 Okl. 495, 46 P.2d 562, this court adopted language from decisions of the Supreme Court of the United States to the effect that courts are beginning to look with favor upon stipulated damage provisions between parties who have equality of opportunity for understanding and insisting upon their rights. In our case the parties were on equal footing, were all educated business people, and their agreement discloses that the stipulated amount was to be considered as "liquidated damages" in the event of a default by the purchasers. The evidence indicates that the actual damage sustained by the vendor was in excess of the stipulated figure of $15,000.00. When the property was subsequently sold, it was for $10,000.00 less than the amount the Waggoners had agreed to pay. There was an additional $6,000.00 real estate commission, an additional attorney fee, and other miscellaneous expenses connected with this subsequent sale of the property. The stipulated amount was reasonable when considered in relation to the actual loss sustained. As discussed above, the damages were extremely difficult to determine at the time the contract was made. In these circumstances the forfeiture provision did not impose a penalty but was a valid liquidated damage provision, and was properly upheld as such by the trial court.

The judgment of the trial court is affirmed.

HALLEY, C. J., JACKSON, V. C. J., and DAVISON, WILLIAMS and LAVENDER, JJ., concur.

· BLACKBIRD, J., dissents.